632 So.2d 344 (1993)
Jerry J. FORET and Reginalda Foret
v.
TERREBONNE TOWING CO., INC. and Terrebonne Fuel & Lube, Inc.
No. CA 92 0664.
Court of Appeal of Louisiana, First Circuit.
December 29, 1993.
Rehearing Denied February 23, 1994.
*345 Danny J. Lirette, Houma, for plaintiffs and appellants, Jerry J. and Reginalda Foret.
James H. Roussell, New Orleans, for defendants and appellants, London & Institute Companies.
C. Berwick Duval, II, Houma, for defendants and appellants, Terrebonne Fuel & Lube, Inc., Terrebonne Towing Co. and Terrebonne Parish Consolidated Government.
Before EDWARDS, CRAIN and LeBLANC, JJ.
EDWARDS, Judge.
Jerry J. Foret was employed by the defendants, Terrebonne Towing, Inc., and/or Terrebonne Fuel & Lube, Inc. (collectively, hereinafter referred to as Terrebonne),[1] as a boat captain and crew member of the M/V CASSIE C, a vessel owned and operated by Terrebonne. On January 12, 1988, Foret was engaged in loading five-gallon drums of fuel onto a flatbed trailer from a pallet that was raised approximately five and a half feet above the ground. Foret was injured when the pallet on which he was standing broke, causing him to fall on his left side against the trailer. This litigation ensued.

General Background
Plaintiffs' original complaint against Terrebonne alleged negligence, under the Jones Act, for failure to provide a safe workplace, and strict liability for ownership of a defective pallet. Plaintiffs later amended the complaint and asserted a claim against Rockwood Insurance Company (Terrebonne's maritime employer's liability insurer),[2] and Lloyd's and Institute Companies (Terrebonne's protection and indemnity insurer, hereinafter referred to as L & I) alleging that both companies issued policies of insurance to Terrebonne which provided "primary and/or excess coverage" for the wrongful acts alleged.
The trial court found that Terrebonne, as owner of the vessel on which the plaintiff was employed, had failed to provide plaintiff a safe place in which to work, and was thus liable to the plaintiff, under the Jones Act, *346 for the personal injuries sustained in the accident.[3] The trial court further found merit in Terrebonne's cross claim against L & I for indemnity and for failure to defend. In accordance with these findings, the trial court rendered judgment, on December 12, 1991, in favor of the plaintiffs and against Terrebonne in the full amount of $461,039; and in favor of Terrebonne, as plaintiff in the cross claim, and against L & I for indemnity in the full sum of $461,039 plus $7,500 for legal fees, together with legal interest from the filing date of the cross claim. Finally, the trial court awarded Foret's wife, also a plaintiff in this matter, $7,500 for loss of consortium.
L & I appeals the trial court judgment[4] arguing essentially that the trial court erred in finding it liable under the policy, and in awarding an amount greater than the limits of the policy. Terrebonne answered the appeal of L & I seeking additional damages for the increased attorneys fees and costs from L & I. Terrebonne also filed its own appeal from the December 12, 1991 judgment. The plaintiffs answered Terrebonne's appeal and seek an increased award of damages. Finally, the plaintiffs appeal the portion of the December 12, 1991 judgment which dismissed its (direct) action against L & I.

L & I's Coverage Defense
Pivotal to an understanding of most of the issues raised in this appeal is a detailed review of the pleadings filed, and actions taken by L & I since the inception of this litigation. The plaintiffs' original complaint, filed December 8, 1988, named only Terrebonne as defendant. In accordance with policy provisions, L & I elected to name the attorneys to represent its insured, Terrebonne, in this matter. Daniel Webb, of the law firm Hoffman, Sutterfield, Ensenat & Bankston first appeared on record "as counsel for defendants, Terrebonne ..." on January 26, 1989.[5] This representation was continuous and without any reservation of rights. In May, 1990, plaintiffs filed the amended complaint adding as defendants the insurers, Rockwood and L & I. The law firm of Hoffman, Sutterfield, Ensenat and Bankston continued to represent Terrebonne and also began to appear as counsel on behalf of P & I Underwriters, whom they claim was erroneously referred to in the pleadings as Lloyd's and Institute Companies. On August 23, 1990, a little less than two months prior to the scheduled trial date, a Motion for Summary Judgment was filed by Hoffman, Sutterfield, Ensenat and Bankston, as attorneys for P & I Underwriters, asserting that the P & I policy "provided no coverage except to the extent that Terrebonne is liable as owner of the insured vessel." A review of the memorandum filed in connection with the motion reveals that L & I was asserting a coverage defense which, if successful, would have released it from potential liability, but left its client and insured, Terrebonne, in the suit, exposed to the full amount of plaintiffs' claim.[6] The motion for summary judgment *347 was heard on September 28, 1990, and was subsequently denied. On October 15, 1990, Hoffman, Sutterfield, Ensenat and Bankston filed a motion to withdraw as counsel of record for Terrebonne, claiming for the first time, a conflict of interests in representing Terrebonne, given the coverage defense asserted. On October 18, 1990, Terrebonne's corporate counsel, Duval, Funderburk, Sundbery & Lovell, filed a motion to enroll as counsel of record for Terrebonne.
On appeal, L & I basically argues that the trial court erred in not finding merit in the coverage defense asserted. Without reaching the merits of the coverage defense, we find, based on the foregoing facts and for the following reasons, that L & I waived its right to raise such a defense to protect itself in this lawsuit.

Waiver
In the instant case, the issue of waiver is interwoven with the issue of the insurer's duty to defend. Under Louisiana law, an insurer is obligated to defend its insured unless the allegations of the petition unambiguously exclude coverage. At a very minimum, an insurer owes its insured the duty to act in good faith. See Holtzclaw v. Falco, Inc., 355 So.2d 1279, 1280-84 (La. 1977), on rehearing. The insurer may protect its own interests and simultaneously provide its insured with a defense; however, this right is not unlimited. See Dugas Pest Control of Baton Rouge, Inc. v. Mutual Fire, Marine and Inland Insurance Company, 504 So.2d 1051, 1053-54 (La.App. 1st Cir. 1987) (emphasis added). When such a conflict of interests arises and the insurer has knowledge of facts indicating noncoverage, it must obtain a nonwaiver agreement to reserve its rights. If an insurer has knowledge of facts indicating noncoverage and voluntarily assumes the insured's defense without obtaining a nonwaiver agreement to reserve its rights, the insurer effectively waives all such policy defenses. Furthermore, the insurer's notice of its intent to avail itself of the defense of noncoverage must be timely. Peavey Company v. M/V ANPA, 971 F.2d 1168 (5th Cir.1992).
Our review of the record reveals that L & I has failed in every aspect of its duty owed Terrebonne. The original complaint filed in this matter alleges that the plaintiff, Jerry J. Foret, was a boat captain, seaman and crewmember of the M/V CASSIE C, which vessel was owned and operated by Terrebonne, Foret's Jones Act employer. The complaint further alleges that while so employed, Foret was injured while performing land based activities in connection with his employment as boat captain of the M/V CASSIE C. It further alleged Terrebonne's negligence was a cause in fact of the accident and injuries sustained by Foret. In an amended complaint, Foret alleges that L & I had in full force and effect a protection and indemnity policy which provided primary and/or excess coverage to Terrebonne. The protection and indemnity policy provided to Terrebonne by L & I Companies, commonly known as Form SP-23, clearly provides coverage to Terrebonne for any liability which Terrebonne may have as owner of the M/V CASSIE C. Therefore, the allegations of the petition do not "unambiguously exclude coverage," and L & I was obligated to defend Terrebonne, in good faith. The record reveals that L & I immediately undertook the defense of Terrebonne and represented it for approximately 18 months. However, then L & I filed its motion for summary judgment as Attorneys for P & I Underwriters only. Not only did L & I file this pleading adverse to the interests of its insured, but the record also reveals that Terrebonne was given no notice whatsoever that L & I was contemplating a coverage defense against it. In fact, the record indicates that Terrebonne was led to believe the defense to be asserted on its behalf, by P & I and its attorneys, was that plaintiffs' claims were essentially employment claims barred by Louisiana's Worker's Compensation Law, and that plaintiff was relegated to compensation coverage. Obviously, L & I did not even attempt to obtain a nonwaiver agreement to reserve its rights to assert a coverage defense, nor did Terrebonne consent to such defense. L & I waived its rights and is thereby precluded *348 from asserting such a defense in this litigation.

Primary or Excess Coverage?
L & I argues that the trial court erred in awarding damages in excess of its $250,000 policy limits. For the following reasons, we find no merit to this claim. On the same day that the original complaint was filed in this matter, plaintiffs propounded interrogatories to Terrebonne, which at # 7 requested the "name and address of each insurance carrier (primary and/or excess) providing coverage on the date of the petitioner's accident and the limits of liability for each such carrier." (emphasis added). (A request for production of documents filed the same day requested a copy of any such policy(ies).) On March 21, 1989, Daniel Webb of Hoffman, Sutterfield, Ensenat and Bankston, on behalf of Terrebonne, responsed to the above two requests that the information requested was being sought and would be forwarded upon receipt. In May, 1990, L & I was named as a defendant in this case by plaintiffs' amended complaint which alleged that "at all times pertinent hereto, the defendant, Lloyd's and Institute Companies, did have in full force and effect a policy of insurance issued to the defendants [Terrebonne]... providing primary and/or excess coverage to said defendants...." Subsequently, both the primary and excess policies issued to Terrebonne were provided to the plaintiffs in response to the earlier requests, and were later introduced into evidence at the trial on this matter, as Exhibit No. "P-2".
The primary policy, bearing # 86H140-015-J7, provides coverage up to $250,000, and reflects that Lloyd's Underwriters provide 48.457% of this coverage and twenty-three other listed member companies provide the remaining 51.543% of this coverage, in percentages ranging from 5.155% to .514%. In lieu of a separate policy for excess coverage, two cover notes were issued to represent the excess coverage. These notes reflect that excess insurance with limits of $750,000 excess of $250,000 was provided. The cover notes also reflect that Lloyd's underwriters provide 89.5% of the excess, and four other listed member companies provide the remaining 10.5%.
The cover notes state as a condition that the excess coverage is subject to "[a]ll terms and conditions as per Underlying Policy(ies) as far as applicable" and that the excess policy was "[s]ubject to Service of Suit Clause." The Service of Suit Clause, attached to the cover notes, designates where service of process may be made upon any of the "Underwriters hereon" and states, in pertinent part, "that in any suit instituted against any one of them upon this contract, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal." (emphasis added).
Clearly, Terrebonne had two insurance policies: one primary policy with limits of $250,000, and an excess policy with limits of $750,000, excess of $250,000. The primary subscriber to both policies is the same: Lloyd's Underwriters. L & I was sued in this lawsuit in its capacity as primary and excess insurer, and both of these policies were furnished by L & I in response to interrogatories and requests for the production of policies of insurance providing the "primary and/or excess" coverage for the alleged wrongful acts. Further, both policies were introduced into evidence at trial as Exhibit P-2, without objection by L & I. Finally, the excess policy is subject to the "Service of Suit Clause" which provides that service upon any one of the Underwriters named therein would apply to all of them. Yet, now, almost incredibly, L & I argues that a judgment in excess of $250,000 is erroneous because "none of the Underwriters and only one of the Companies" subscribing to the excess insurance have been named as a party to this lawsuit.
Not only do we reject this argument based on the express language of the policy, but we also find L & I is estopped from asserting such a claim. L & I furnished copies of both the primary and excess insurance policies in response to the plaintiffs' request for "primary and/or excess" policies. L & I failed to point out the plaintiffs' failure to specifically name each of the member companies providing excess coverage, plaintiffs were reasonable in assuming that naming *349 "Lloyd's and Institute Companies" was sufficient. See LSA-C.C. art. 1967.[7]

Direct Action Statute
In its answer, L & I asserted as a defense that the plaintiffs' amended complaint failed to state a cause of action and/or a claim against it. The basis for this defense is L & I's claim that the Louisiana Direct Action Statute is inapplicable to a marine protection and indemnity insurer. During the appeal of this matter, the supreme court answered the certified question whether a direct action may be had against a marine protection and indemnity insurer in the affirmative. Grubbs v. Gulf International Marine, Inc., 625 So.2d 495 (La.1993). Therefore, the trial court erred in dismissing plaintiffs' direct action against L & I. In accordance with this finding, the trial court judgment is amended to reflect judgment rendered in favor of the plaintiffs against both Terrebonne and L & I.

Attorneys Fees
Our rejection of L & I's claim that the excess insurer was not made a party to these proceedings moots L & I's assignment of error that the trial court erred in awarding attorney's fees which exceeded the policy limits. The trial court awarded $7,500 in legal fees, and these fees together with the full amount of damages awarded fall within the total policy limits of both policies.
However, we must address Terrebonne's request for increased fees in light of the increased cost of litigation occasioned by this appeal. Terrebonne has requested that we remand this matter to allow it to present evidence on this issue. However, we do not think a remand is necessary. The record contains sufficient evidence to justify an increase in attorneys fees in the amount of $5,000, for a total award of attorneys fees in the amount of $12,500.

Loss of Consortium
Both L & I and Terrebonne contend that the trial court erred in awarding Mrs. Foret damages for loss of consortium. In brief, plaintiffs concede that the U.S. Supreme Court, in Miles v. Apex, 498 U.S. 19, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990), held that the spouse of an injured seaman does not have a claim, under the Jones Act or under general maritime law, for loss of society or consortium. Accordingly, we vacate this portion of the trial court's judgment.

Prejudgment Interest
Both, L & I and Terrebonne contend that the trial court erred in awarding judicial interest from the date of demand, rather than from the date of judgment. When liability for a Jones Act claim rests on negligence principles only, the court's admiralty jurisdiction is not invoked, and prejudgment interest is not awardable. Williams v. Reading & Bates Drilling Company, 750 F.2d 487, 491 (5th Cir.1985); Theriot v. J. Ray McDermott & Company, 742 F.2d 877 (5th Cir.1984); Wyatt v. Penrod Drilling Company, 735 F.2d 951 (5th Cir.1984). This action in negligence invoked only general maritime principles, and was not brought under admiralty jurisdiction. Therefore, the trial court erred in awarding prejudgment interest. The judgment of the trial court is amended to reflect that judicial interest is awarded from the date of judgment, rather than from the date of judicial demand.

Terrebonne Towing, Inc.
On appeal, Terrebonne argues that the trial court erred in rendering judgment *350 against it as well as against Terrebonne Fuel and Lube, Inc. As noted earlier, Terrebonne Towing was the record owner of the M/V CASSIE C, and had bareboat chartered the vessel to Terrebonne Fuel and Lube. Terrebonne Fuel and Lube, thereby, became owner pro hac vice of the vessel. This issue is not being contested, and we note that the erroneous inclusion of Terrebonne Towing in the judgment was in all probability, an oversight by the trial court, who, for the sake of convenience, referred to both companies, collectively, as Terrebonne (as we have done in this appeal.) Therefore, we amend the judgment of the trial court to omit Terrebonne Towing.

Damages
The trial court awarded damages for Jerry Foret's injuries in the full amount of $453,539; $200,000 of this amount represents the award for general damages. Plaintiffs allege that $200,000 in general damages is insufficient to compensate Jerry Foret for the pain and suffering associated with this accident.
The latest pronouncement from our supreme court regarding our standard of review of general damage awards is as follows:
The standard for appellate review of general damage awards is difficult to express and is necessarily non-specific, and the requirement of an articulated basis for disturbing such awards gives little guidance as to what articulation suffices to justify modification of a generous or stingy award. Nevertheless, the theme that emerges from Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963) through Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976), and through Reck [v. Stevens, 373 So.2d 498] [(La.1979)] to the present case is that the discretion vested in the trier of fact is "great," and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.
Hae Woo Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993).
We have carefully reviewed the record with respect to the injuries sustained by Foret in this accident. Plaintiff has undergone one surgery on his shoulder, and two cervical disc excisions and fusions. Furthermore, the evidence shows that the plaintiff will more than likely require another surgery in the future. The record further leaves no doubt that there is substantial pain associated with these injuries. However, the trial court assessed general damages at $200,000, and based on the mandate above, and the evidence in the record, we cannot say that the trial court abused its "vast" discretion in awarding this amount. Therefore, the trial court's award of damages is affirmed.
For the foregoing reasons, the judgment of the trial court is amended in the following respects:
(1) to reflect it is rendered against Terrebonne Fuel and Lube, Inc., and Lloyd's and Institute Companies, jointly, severally and in solido, together with judicial interest from December 12, 1991 until paid;
(2) the portion of the judgment awarding Mrs. Foret $7,500 for loss of consortium is vacated; and
(3) the award for legal fees is increased to $12,500 to reflect the increased costs of litigation necessitated by this appeal. In all other respects the judgment is affirmed, and costs of this appeal are assessed to L & I.
AMENDED, AND AS AMENDED AFFIRMED.
NOTES
[1] Terrebonne Towing, Co., Inc., now dissolved, chartered out certain vessels, including the CASSIE C, which is at issue in this litigation, to Terrebonne Fuel and Lube, Inc., under a bare-boat charter agreement. At the time of this accident, Terrebonne Fuel and Lube, Inc. owned one-third of Terrebonne Towing, Co., Inc.
[2] Rockwood Insurance Company participated in these proceedings until all claims against it were stayed, by order of the court dated January 24, 1991, pending its reorganization in Pennsylvania.
[3] Implicit in this factual finding by the trial court is the conclusion that Jerry Foret was a "seaman" within the contemplation of the Jones Act. This finding has not been contested.
[4] The judgment being appealed is the December 12, 1991 judgment. After filing its motion for appeal, but prior to filing the necessary appeal bond, L & I asserted for the first time throughout this litigation that the policy limits were $250,000, and that the judgment rendered against it was in excess of the policy limits. (The merits to this argument are addressed in the full opinion.) On January 23, 1992, L & I obtained an ex parte amendment of the December 12, 1991 judgment, which altered the amount awarded to Terrebonne on the cross claim to $245,000. Later that same day, L & I filed its appeal bond, to perfect its appeal. Subsequently, upon motions filed by the other parties, the trial court recalled, vacated and annulled the amended judgment (such amendment was a substantive change in violation of LSA-C.C.P. art. 1951, see Preston Oil Company v. Transcontinental Gas Pipe Line Corporation, 594 So.2d 908 (La.App. 1st Cir.1991)) and reinstated the December 12, 1991 judgment. Therefore, despite contentions to the contrary, the judgment on appeal is the December 12, 1991 judgment.
[5] Webb's first appearance was actually with the law firm Carmouche, Gray and Hoffman; a motion to enroll and substitute counsel of record was filed in May, 1989, on behalf of the newly formed law firm, Hoffman, Sutterfield, Ensenat and Bankston, which firm would "remain enrolled as counsel of record for defendants herein."
[6] The thrust of L & I's argument rejecting coverage is that its policy only protects Terrebonne from claims arising out of its ownership of the vessel, while the claims asserted by the plaintiffs expose Terrebonne only to liability as the employer of a crewman of the vessel. For reasons more fully explained in this opinion, we need not address this argument.
[7] We reject L & I's contention that estoppel may not be applied in this situation. L & I cites cases which follow our jurisprudential principle that estoppel may not be invoked to bring within the coverage of an insurance policy risks originally excluded or not covered. See Balehi Marine, Inc., v. Firemen's Insurance Company of Newark, New Jersey, 460 So.2d 16 (La.App. 1st Cir.1984), writ denied, 462 So.2d 654 (La.1985); Hunter v. Office of Health Services and Environmental Quality of the Dept. of Health and Human Resources, 385 So.2d 928 (La.App. 2nd Cir.), writs denied, 393 So.2d 737 (La.1980). We find this line of cases distinguishable and inapposite. This principle is applied to prevent estoppel from being used to allow coverage under a policy which is inconsistent with the terms therein, i.e., to cover a risk specifically excluded by the policy language. The issue raised by L & I that the specific underwriters for the excess policy have not been named and made a party to this litigation does not involve the terms and conditions of either of the policies, nor does our invocation of the theory of estoppel bring within either of the policies coverage ordinarily excluded. L & I's reliance on this principle is misplaced, and will not serve to protect it in this case.