727 So.2d 655 (1999)
Bobby R. CASSEY and Gwen Cassey, Plaintiffs-Appellants,
v.
Michael STEWART, et al., Defendants-Appellees.
No. 31,437-CA.
Court of Appeal of Louisiana, Second Circuit.
January 20, 1999.
Rehearing Denied February 18, 1999.
*656 Johnson & Placke By Don H. Johnson, West Monroe, for Appellants.
Robert I. Baudouin, New Orleans, for Appellees.
Before NORRIS, C.J., GASKINS and PEATROSS, JJ.
GASKINS, Judge.
The plaintiffs, Bobby R. Cassey and his wife, Gwen Cassey, object to the trial court's granting of summary judgment in favor of the defendants, Michael Stewart and Commercial Union Insurance Company. In ruling for summary judgment, the trial court found that the individual who shot Mr. Cassey was not Mr. Stewart's employee and therefore, not covered by his insurance. For the following reasons, we affirm the trial court judgment.

FACTS
Michael Stewart and/or Stewart Wright, Inc. owned a building in Jonesboro, Louisiana. One portion of the building housed a liquor store operated by Mr. Stewart called Leon Drive Grocery. The other portion of the building housed a club called Fred's Spot. The club did not sell liquor. However, customers frequently purchased liquor at the grocery and then walked around to Fred's Spot to drink.
Mr. Stewart had an arrangement with Terry Cottonham whereby Mr. Cottonham operated Fred's Spot and had the concession on hamburgers, hot dogs, french fries and soft drinks. Mr. Cottonham kept all the money from the sale of food. Mr. Stewart did not pay Mr. Cottonham anything and Mr. Cottonham did not share the food proceeds with Mr. Stewart. Mr. Cottonham also worked at a furniture company during the day and hired Ricky Nichols to operate Fred's Spot *657 during his absence. Mr. Nichols kept a gun in the club.
On April 25, 1992, Mr. Cassey went to the club to play dominoes. According to Mr. Nichols, Mr. Cassey was intoxicated and picked up a bottle of alcohol that belonged to another club patron. When Mr. Nichols informed Mr. Cassey that he had picked up a drink that did not belong to him, words were exchanged. Mr. Nichols claimed that when Mr. Cassey began reaching for his pocket, Nichols assumed Cassey was armed. Mr. Nichols then drew his own weapon and shot the plaintiff three times. It was later determined that Mr. Cassey did not have a gun.
On March 22, 1993, Bobby Cassey and his wife, Gwen, filed suit against Michael Stewart, d/b/a Leon Drive Grocery, Commercial Union Insurance Company and Ricky Nichols, claiming that Mr. Cottonham and Mr. Nichols were employees of Mr. Stewart and that Ricky Nichols shot Mr. Cassey during the course and scope of his employment. Mr. Cassey claimed that he was permanently disabled. Mrs. Cassey asserted a loss of consortium claim.
All three defendants were originally represented by Thomas Zentner. Mr. Zentner filed an answer on behalf of the defendants "admitting the status as alleged" but denying liability. However, on December 9, 1994, Mr. Zentner withdrew as counsel for Mr. Stewart and Commercial Union and continued to represent Mr. Nichols. Another lawyer enrolled to represent Mr. Stewart and Commercial Union. Shortly after suit was filed, Mr. Stewart died and his wife, Vicki Stewart, was substituted as party defendant.
On March 29, 1995, Commercial Union and Stewart filed the present motion for summary judgment, claiming that Fred's Spot was not owned personally by Michael Stewart, but by Stewart Wright, Inc.[1] and that Ricky Nichols was not an employee of Mr. Stewart. Therefore, Mr. Stewart was not liable for Mr. Cassey's injury and his insurance with Commercial Union did not cover this incident.[2]
On October 26, 1995, Commercial Union and Stewart filed a supplemental and amending petition adopting the coverage defenses asserted in the motion for summary judgment and averring that Ricky Nichols was not an employee of Michael Stewart, Stewart Wright, Inc. or Leon Drive Grocery. They also claimed that Nichols is not covered by the policy of insurance due to the intentional tort exclusion.
The plaintiffs objected to the motion for summary judgment, claiming that the defendants waived any coverage defenses they might have by representing Mr. Nichols for nineteen months without denying coverage.
Hearing on the motion for summary judgment was held on February 5, 1998. The court filed reasons for judgment on February 6, 1998, granting the motion for summary judgment in favor of Mr. Stewart and Commercial Union. The court found that there was no employee relationship between Mr. Stewart and either Mr. Cottonham or Ricky Nichols. The court found that the relationship between Mr. Stewart and Mr. Cottonham was either landlord/tenant or that of an independent contractor. A judgment granting summary judgment was filed February 12, 1998. The plaintiffs appealed the trial court judgment.
On appeal, the plaintiffs contend that the trial court erred in allowing Commercial Union to urge a coverage defense by way of a motion for summary judgment after the company had already admitted the status of the insured in its answer, admitted coverage in responses to interrogatories and had provided a defense to Mr. Nichols without obtaining a nonwaiver agreement.
The plaintiffs also dispute the trial court's finding that Mr. Cottonham and Mr. Nichols were not employed by Mr. Stewart. They further contend that Ricky Nichols was acting *658 within the course and scope of his employment when this incident occurred.

WAIVER OF NONCOVERAGE DEFENSE
The plaintiffs contend that the trial court erred in allowing Commercial Union to urge the defense of noncoverage by way of a motion for summary judgment where the company had represented Ricky Nichols for nineteen months without obtaining a nonwaiver agreement.[3] This argument is without merit.
Waiver is generally understood to be the intentional relinquishment of a known right, power or privilege. Steptore v. Masco Construction Company, Inc. 93-2064 (La.8/18/94), 643 So.2d 1213. Waiver occurs when there is an existing intention to relinquish it or conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished. Steptore v. Masco Construction Company, Inc., supra. A waiver may apply to any provision of an insurance contract, even though this may have the effect of bringing within coverage risks originally excluded or not covered. Steptore v. Masco Construction Company, Inc. supra.
It is well established that an insurer is charged with the knowledge of the contents of its own policy. In addition, notice of facts which would cause a reasonable person to inquire further imposes a duty of investigation upon the insurer, and failure to investigate constitutes a waiver of all powers or privileges which a reasonable search would have uncovered. Steptore v. Masco Construction Company, Inc., supra.
Waiver principles are applied stringently to uphold the prohibition against conflicts of interest between the insurer and the insured which could potentially affect legal representation in order to reinforce the role of the lawyer as the loyal advocate of the client's interest. Steptore v. Masco Construction Company, Inc., supra.
The duty of an insurer to defend an insured is determined by the allegations of the plaintiffs petition, with the insurer being obligated to furnish a defense unless the petition unambiguously excludes coverage. When a conflict of interest arises, and the insurer has knowledge of facts indicating noncoverage, it must obtain a nonwaiver agreement to reserve its right to deny coverage. Vargas v. Daniell Battery Manufacturing Company, Inc., supra. Accordingly, when an insurer, with knowledge of the facts indicating noncoverage under the insurance policy, assumes or continues the insured's defense without obtaining a nonwaiver agreement to reserve its coverage defense, the insurer waives such policy defense. Steptore v. Masco Construction Company, Inc., supra; Leflore v. Coburn, 95-0690 (La.App. 4th Cir. 12/28/95), 665 So.2d 1323, writs denied 96-0411, 96-0453 (La.3/29/96), 670 So.2d 1234. Furthermore, the insurer's notice of its intent to avail itself of the defense of noncoverage must be timely. Foret v. Terrebonne Towing Company, Inc., 632 So.2d 344 (La.App. 1st Cir.1993), writ denied 94-0734 (La.5/13/94), 637 So.2d 1067.
In this case, the record demonstrates that Commercial Union Insurance Company timely obtained a nonwaiver agreement from its insured, Michael Stewart, and also timely informed Ricky Nichols of its reservation of rights in this matter. The record contains a nonwaiver agreement executed by Michael Stewart on August 14, 1992. Also, when the possibility of noncoverage became apparent, Commercial Union obtained counsel different from Mr. Nichols. On November 3, 1994, the insurance company sent a reservation of rights letter to Mr. Nichols through his attorney of record, stating in essence that the company intended to assert the defense of noncoverage. The letter informed Mr. Nichols that, "If it is found that you were not an employee of Leon Drive Grocery at the time of the incident and/or you were not in the course and scope of your duties when the incident occurred, then Commercial *659 Union will not provide either a defense or indemnity to you." Mr. Nichols has not objected to Commercial Union's actions.
The present case is distinguishable from Hiser v. Rajki, 97-2208 (La.App. 1st Cir. 9/30/97), 700 So.2d 1302, where there was apparently no nonwaiver agreement and the defense of noncoverage was asserted twenty-two days before trial. In the present case, there was a nonwaiver agreement with the insured and a reservation of rights as to Ricky Nichols. Further, the defense of noncoverage was asserted timely. Therefore, Commercial Union has not waived its right to assert the defense of noncoverage as the plaintiffs argue.

EMPLOYEE STATUS
The plaintiffs assert that the trial court erred in granting summary judgment in this case based upon an affidavit and depositions submitted by Commercial Union to show that Ricky Nichols was not an employee of Michael Stewart and therefore, was not covered under the policy of insurance. This argument is without merit.
In evaluating this issue, the arguments and documentation provided by the defendants must be evaluated under the principles governing motions for summary judgment. The summary judgment procedure is designed to secure the just, speedy and inexpensive determination of every action allowed by law. Traweek v. Jackson, 30,248 (La.App.2d Cir.2/25/98), 709 So.2d 867. Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342 (La.1991); Smith v. Our Lady of the Lake Hospital, Inc., 93-2512 (La.7/5/94), 639 So.2d 730. Thus, an appellate court questions whether a genuine issue of material fact exists and whether the mover is entitled to judgment as a matter of law. Orea v. Brannan, 30,628 (La.App.2d Cir.6/24/98), 715 So.2d 108.
Summary judgments are governed by La. C.C.P. art. 966, which was amended in both the 1996 and 1997 legislative sessions. See Acts 1996, 1st Ex.Sess., No. 9 and Acts 1997, No. 483. The effect of these amendments is to establish that summary judgment is now favored. La. C.C.P. art. 966(A)(2); Short v. Giffin, 96-0361 (La.App. 4th Cir. 8/21/96), 682 So.2d 249, writ denied 96-3063 (La.3/7/97), 689 So.2d 1372. A motion for summary judgment should be granted if the pleadings, depositions, interrogatories, admissions on file and affidavits show that there is no genuine issue of material fact and the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966; Traweek v. Jackson, supra.
La. C.C.P. art. 966 now states that if the moving party points out that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense, and the nonmoving party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact and summary judgment should be granted. Traweek v. Jackson, supra.
Further, La. C.C. art. 967 provides that when a motion for summary judgment is made and supported as above, an adverse party may not rest on his pleadings, but his responses, by affidavits or otherwise provided above, must set forth specific facts showing that there is no genuine issue for trial. If he does not so respond, summary judgment is appropriate and shall be rendered against him. Traweek v. Jackson, supra; Goodrich v. Caterpillar, Inc., 30,762 (La. App.2d Cir.8/19/98), 717 So.2d 1235.
Regarding the determination of whether an individual is an employee, in Savoie v. Fireman's Fund Insurance Company, 347 So.2d 188 (La.1977), the court stated that the word "employee" is one used in common parlance and readily understood by men of ordinary intelligence. In discussing the various definitions of "employee" the court noted that it is one who works for an employer, a person working for salary or wages.
In determining whether an employment relationship exists in other contexts, the jurisprudence of this state has uniformly held that the most important element to be considered is the right of control and supervision *660 over an individual. Savoie v. Fireman's Fund Insurance Company, supra; Fuller v. United States Aircraft Insurance Group, 530 So.2d 1282 (La.App. 2d Cir.1988), writ denied 534 So.2d 444 (La.1988), cert. denied 490 U.S. 1046, 109 S.Ct. 1954, 104 L.Ed.2d 424 (1989). Factors to be considered in assessing the right of control are the selection and engagement of the worker, the payment of wages and the power of control and dismissal. Savoie v. Fireman's Fund Insurance Company, supra; Pitcher v. Hydro-Kem Services, Inc., 551 So.2d 736 (La. App. 1st Cir.1989), writ denied 553 So.2d 466 (La.1989); Felan v. F & F Trucking Inc., 97-983 (La.App. 3d Cir.2/4/98), 708 So.2d 430, writ denied 98-0595 (La.4/24/98), 717 So.2d 1172.
Although the plaintiffs argue strenuously that Mr. Cottonham and Mr. Nichols were employees of Michael Stewart, the record does not support that conclusion. Mrs. Vicki Stewart executed an affidavit which was attached to the motion for summary judgment, stating in essence, that she is familiar with the business records of Leon Drive Grocery and Stewart Wright, Inc., and that neither Mr. Cottonham nor Mr. Nichols were on the payroll at the time the shooting occurred. The plaintiffs attack this affidavit, arguing that these men were not on the payroll because Mr. Stewart had a cash relationship with Mr. Cottonham to run Fred's Spot. However, the depositions of Mr. Cottonham and Mr. Nichols fail to offer any support for the argument that they were employed by Mr. Stewart, Leon Drive Grocery or Stewart Wright, Inc.
According to Mr. Cottonham, he had previously worked as a cashier in the Leon Drive Grocery, but asked to take over Fred's Spot when it became available. Mr. Stewart did not pay anything to Mr. Cottonham and Mr. Cottonham did not pay rent for the space. Mr. Cottonham's only remuneration from the arrangement was the proceeds from the sale of food and soft drinks. Mr. Cottonham stated that he opened, closed and cleaned the club and served food while it was open. However, the record fails to show that Mr. Stewart exercised any control over Mr. Cottonham. Mr. Stewart did not specify the hours of operation, the hours that Mr. Cottonham worked, what was served or how much was charged for the food. Mr. Cottonham's deposition shows that his status as an employee ended when he stopped working at the Leon Drive Grocery. In his deposition, he stated, "I was checking out when I was employed over in that side. When I left there, I was no longer employed." Mr. Nichols' deposition also demonstrated that he did not think that Mr. Cottonham was an employee of Mr. Stewart, but thought that Mr. Cottonham leased the club from Mr. Stewart. Therefore, in support of their motion for summary judgment, the defendants have demonstrated that Mr. Cottonham was not Mr. Stewart's employee. There was no payment of wages nor did Mr. Stewart exercise control or supervision over Mr. Cottonham's activities. Rather, as found by the trial court, the relationship was more closely akin to that of a landlord/tenant or an owner/independent contractor. Mr. Stewart exercised no control over the manner in which Mr. Cottonham ran the club or who he hired to work there.
Similarly, Mr. Nichols' deposition demonstrates even more clearly that he was not an employee of Mr. Stewart, Leon Drive Grocery or Stewart Wright, Inc., nor did he presume himself to be so employed. Mr. Cottonham hired Ricky Nichols to look after the club while Mr. Cottonham worked at a furniture store during the day. Mr. Cottonham paid Mr. Nichols out of the proceeds of the food and soft drink sales. Both Mr. Cottonham and Mr. Nichols stated in their depositions that Mr. Stewart was not aware that Ricky Nichols was working at Fred's Spot. Therefore, Mr. Stewart did not hire Mr. Nichols, did not pay him, did not control his duties and had no power to dismiss him from Mr. Cottonham's employ.
We find that the defendants, Michael Stewart and Commercial Union Insurance Company, sufficiently supported their claim that neither Terry Cottonham nor Ricky Nichols were employees of Michael Stewart, Leon Drive Grocery or Stewart Wright, Inc. Therefore, Mr. Nichols was not covered under the Commercial Union insurance policy. The plaintiffs then failed to sufficiently dispute *661 that assertion and failed to show that a genuine issue existed for trial. Therefore, the trial court properly rendered summary judgment against the plaintiffs and in favor of the defendants on the issue of insurance coverage.
Because we find that the trial court correctly granted summary judgment in favor of the defendants on this issue, we do not reach the question of whether Nichols acted in the course and scope of his employment when he shot Mr. Cassey.

CONCLUSION
For the reasons stated above, we affirm the trial court ruling granting summary judgment in favor of the defendants, Michael Stewart and Commercial Union Insurance Company. Costs in this court are assessed to the plaintiffs, Bobby Cassey and Gwen Cassey.
AFFIRMED.
NORRIS, C.J., concurs with reasons.
NORRIS, C.J., concurring.
While agreeing with the analysis and outcome in this case, I write separately to clarify that the 1996 and 1997 revisions to Article 966 do not "establish that summary judgment is now favored." The article actually states that the procedure is favored. La. C.C.P. art. 966 A(2), as amended. I do not interpret this proviso as soliciting wide and indiscriminate rendition of summary judgments, but as overruling jurisprudence which held the procedure in disfavor and restoring it to an integral role in overall scheme of the Code. See, Mark Tatum and William Norris III, Summary Judgment and Partial Judgment in Louisiana: The State We're In, 59 La. L.Rev. ___, at p. 12 (1998).
With this clarification, I respectfully concur.

APPLICATION FOR REHEARING
Before NORRIS, C.J., STEWART, CARAWAY, GASKINS and PEATROSS, JJ.
Rehearing denied.
NOTES
[1] The defendants note that, for the purposes of this motion for summary judgment, they have abandoned the argument that Stewart Wright, Inc. owned the building and not Michael Stewart personally.
[2] The insurance policy in this case includes in the definition of "insured" employees of the named insured when acting within the course and scope of their duties as such.
[3] A nonwaiver agreement, made between the insurer and the insured, is an agreement whereby the insurer undertakes the insured's defense with the stipulation that the insurer does not waive its right to deny coverage. See Vargas v. Daniell Battery Manufacturing Company, Inc., 93-2282 (La.App. 1st Cir. 12/29/94), 648 So.2d 1103.