643 So.2d 1213 (1994)
Cornell STEPTORE, Sr.
v.
MASCO CONSTRUCTION CO., INC., Ocean Marine Indemnity Co., and Underwriters at Lloyds.
No. 93-C-2064.
Supreme Court of Louisiana.
August 18, 1994.
Concurring Opinion August 24, 1994.
Opinion Denying Rehearing September 30, 1994.
*1214 Gary Paul Koederitz, Luther F. Cole, George Ann Hayne Graugnard, Philip Bohrer, Koedertiz & Bohrer, Baton Rouge, Michael Joseph Kincade, Bailey, Rossi & Kincade, Metairie; and R.A. Redwine, Sessions & Fishman, New Orleans, for applicant.
Robert Collin Evans, Mark Fierro, Michael W. Mallory, Evans & Company; and Michael Leever McAlpine and J. Clayton Davie, Jr., McAlpine, Peuler, Cozad & Davie, New Orleans, for respondent.
Concurring Opinion by Justice Ortique August 24, 1994.
DENNIS, Justice.[*]
We granted certiorari to consider, inter alia, whether the liability insurer in this case waived its right to deny coverage based on its insured's violation of a warranty as to the location of the insured's barge because the insurer, with knowledge of facts indicating noncoverage, voluntarily assumed and continued the insured's defense without obtaining a nonwaiver agreement to reserve its rights. We conclude that the insurer waived its coverage defense based on the warranty violation. Because this decision is dispositive of the case, we pretermit the other issues raised by the petition for certiorari.

Facts
This case arises out of a claim for personal injuries sustained by Cornell Steptore, Sr. on November 20, 1986, while working as a laborer aboard the M/V DONNA RITA. The DXE-25, a steel crane barge, was moored alongside the M/V DONNA RITA to unload cargo. The plaintiff, Steptore, was injured when a steel cable affixed to the DXE-25's crane bucket broke and struck him in the face. Steptore fell nine feet to the deck of the DXE-25 and sustained disabling injuries.
The plaintiff filed suit against the owner of the DXE-25, Masco Construction Co. (Masco), *1215 its primary liability insurer, Ocean Marine Indemnity Co. (Ocean Marine), and its excess liability insurer, Certain Underwriters at Lloyd's, London (Lloyd's). The petition for damages alleged that the accident was caused by Masco's negligence and that both insurance companies had insurance contracts providing coverage for the type of liability asserted. Commercial Union Insurance Company (Commercial Union), the plaintiff's employer's primary insurer, intervened in the suit to recover amounts it had paid Steptore in Longshore and Harbor Workers' Compensation Benefits.
Upon receiving notice of the suit on September 21, 1987, Ocean Marine engaged Evans & Co. to represent both Masco and Ocean Marine. On March 2, 1988, approximately six months after undertaking the defense of Masco, Ocean Marine denied coverage on the grounds that Masco breached a navigation warranty contained in the policy. Ocean Marine asserted that the warranty had been violated when the DXE-25 was moved from its designated location to another site several days before the accident. Evans & Co. withdrew from the representation of Masco but remained in the case as attorneys for Ocean Marine.
After Ocean Marine denied coverage, Masco retained counsel and filed a third party demand naming as defendants Ocean Marine, Martin Insurance Agency, the individual insurance agency which had obtained the insurance policy for Masco, and Gulf Coast Marine, Inc., the insurance broker representing Ocean Marine and Lloyd's. This demand alleged that the third party defendants were liable to Masco for indemnity for any judgment against Masco on the main demand with interest and attorney's fees. Martin also filed a third party demand against Lloyd's and Ocean Marine for the attorney's fees it incurred as a result of the insurers' denial of defense and indemnity to Masco.

Procedural History
Prior to trial, Ocean Marine and Lloyds filed a motion for summary judgment seeking a determination that there was no coverage under the policy. Steptore, Masco and Martin filed cross motions for summary judgment seeking a ruling on the coverage issue in their favor. The trial court granted the motions of Steptore, Masco and Martin and denied the motion of Ocean Marine and Lloyd's. After trial on the merits the court entered judgment in favor of Steptore and against Masco, Ocean Marine and Lloyd's in the sum of $277,000 for lost wages and earning capacity, $125,000 for general damages, $63,295.05 for past medical expenses, and $15,000 for future medical expenses. The judgment in favor of the plaintiff was made subject to judgment in favor of Commercial Union for $63,693.05 for past medical expenses, $45,266.27 for past payments and for any additional payments to plaintiff since the date of trial made pursuant to the Longshore and Harbor Worker's Compensation Act. The trial court also awarded attorney's fees in the amount of $24,412.50 to both Masco and Martin, which were incurred as a result of Ocean Marine's denial of coverage and defense under the policy.
Ocean Marine and Lloyd's appealed the judgment finding coverage, alleging that Masco's breach of the policy's navigation warranty voided coverage, and appealed the judgments awarding attorney's fees to Masco and Martin.
The court of appeal found that the navigation warranty was unambiguous and that Ocean Marine was not precluded from asserting the navigation warranty as an exclusion to coverage. Therefore, the court of appeal reversed the judgment of the trial court and rendered judgment in favor of Ocean Marine and Lloyd's, declaring that there was no insurance coverage for the plaintiff's accident, 619 So.2d 1183. The court of appeal also reversed the judgments awarding attorney's fees to Masco and Martin because it found that Ocean Marine was entitled to deny coverage for the loss, 621 So.2d 214.
Steptore, Masco, Martin, and Commercial Union jointly applied for writs, seeking review of the decisions of the court of appeal finding no coverage under the insurance policies and reversing the judgments awarding attorney's fees. The parties assert various theories supporting coverage under the policy and waiver of the coverage defense. We conclude that the insurer waived its coverage *1216 defense and now reverse the judgment of the court of appeal.

Waiver
Waiver is generally understood to be the intentional relinquishment of a known right, power, or privilege. Tate v. Charles Aguillard Ins. & Real Estate, Inc., 508 So.2d 1371 (La.1987); Ledoux v. Old Republic Life Ins. Co., 233 So.2d 731 (La.App. 3d Cir.), cert denied 256 La. 372, 236 So.2d 501 (1970); Peavey Co. v. M/V ANPA, 971 F.2d 1168 (5th Cir.1992); Comment, Waiver and Estoppel in Louisiana Insurance Law, 22 La.L.Rev. 202 (1961); 16B Appleman, Insurance Law and Practice, § 9081 (1981); Couch on Insurance 2d, § 35:249 (Rev. ed. 1985). Waiver occurs when there is an existing right, a knowledge of its existence and an actual intention to relinquish it or conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished. Tate, supra; Peavey, supra; Ledoux, supra; 16B Appleman, supra, § 9085. A waiver may apply to any provision of an insurance contract, even though this may have the effect of bringing within coverage risks originally excluded or not covered. Tate, supra.
It is well established that an insurer is charged with knowledge of the contents of its own policy. Youngblood v. Allstate Fire Ins. Co., 349 So.2d 462 (La.App. 3d Cir.1977); Davis v. Aetna Casualty & Surety Co., 329 So.2d 868 (La.App. 2d Cir.), writ denied, 333 So.2d 233 (1976); Pellets, Inc. v. Millers Mutual Fire Ins. Co., 241 So.2d 550 (La.App. 2d Cir.1970), writ denied, 257 La. 607, 243 So.2d 274 (1971). In addition, notice of facts which would cause a reasonable person to inquire further imposes a duty of investigation upon the insurer, and failure to investigate constitutes a waiver of all powers or privileges which a reasonable search would have uncovered. Swain for and on behalf of Swain v. Life Ins. Co. of Louisiana, 537 So.2d 1297 (La.App. 2d Cir.1989), writ denied, 541 So.2d 895 (1989); Foret v. Terrebonne Towing Co., Inc., 632 So.2d 344 (La. App. 1st Cir.1993); Peterson v. Pacific Fire Ins. Co., 148 So. 283 (La.App.Orl.Cir.1933); Franz v. United Casualty Co., 49 F.Supp. 267 (E.D.La.1943); Comment, La.L.Rev. supra 206; 16B Appleman, supra § 9084.
Waiver principles are applied stringently to uphold the prohibition against conflicts of interest between the insurer and the insured which could potentially affect legal representation in order to reinforce the role of the lawyer as the loyal advocate of the client's interest. Employers Mutual Liability Ins. Co. of Wisconsin v. Sears, Roebuck & Co., 621 F.2d 746, 747 (5th Cir.1980); Pacific Indemnity Co. v. Acel Delivery Serv., 485 F.2d 1169, 1173 (5th Cir.1973), cert denied, 415 U.S. 921, 94 S.Ct. 1422, 39 L.Ed.2d 476 (1974); Parsons v. Continental National American Group, 113 Ariz. 223, 550 P.2d 94 (1976); Employers Casualty Co. v. Tilley, 496 S.W.2d 552 (Tx.1973); Transamerica Ins. Group v. Chubb and Son, Inc., 16 Wash. App. 247, 554 P.2d 1080 (1976). Cf. Dugas Pest Cont. v. Mutual Fire, Marine and Inland Ins. Co., 504 So.2d 1051 (La.App. 1st Cir.1987); Brasseaux v. Girourd, 214 So.2d 401 (La.App. 3d Cir.), writ denied, 253 La. 60, 216 So.2d 307 (1968); Storm Drilling Company v. Atlantic Richfield Corp., 386 F.Supp. 830 (E.D.La.1974). See Rule 1.7, La.Rules of Professional Conduct; Restatement of the Law (3rd), The Law Governing Lawyers, Chapter 8, Introductory Note, §§ 201 & 202 (Tentative Draft 1990); Opinion 342, Opinions of the Committee on Professional Responsibility (La.State Bar Ass'n 1974); 15 McKenzie & Johnson, Insurance Law and Practice § 216 (1986). Accordingly, when an insurer, with knowledge of facts indicating noncoverage under the insurance policy, assumes or continues the insured's defense without obtaining a nonwaiver agreement to reserve its coverage defense, the insurer waives such policy defense. Peavey Co. v. M/V ANPA, 971 F.2d 1168 (5th Cir. 1992); Pitts By and Through Pitts v. American Sec. Life Ins. Co., 931 F.2d 351 (5th Cir.1991); Ideal Mut. Ins. Co. v. Myers, 789 F.2d 1196 (5th Cir.1986); Employers Mutual Liability Ins. Co. of Wisconsin v. Sears, Roebuck & Co., 621 F.2d 746, 747 (5th Cir. 1980); 16C Appleman, Insurance Law and Practice § 9361.25 (1981). Cf. Tate v. Charles Aguillard Ins. & Real Estate, Inc., 508 So.2d 1371 (La.1987); Ledoux v. Old Republic Life Ins. Co., 233 So.2d 731 (La. *1217 App. 3d Cir.), cert denied 256 La. 372, 236 So.2d 501 (1970).
There is no genuine dispute as to the material facts pertinent to the waiver issue. Applying the foregoing precepts to those facts, we conclude that Ocean Marine waived its right to assert a coverage defense by assuming and continuing the defense of its insured in the face of facts indicating that it had a right to deny coverage for the accident.
The navigation warranty contained in the policy provided that the barge was to be located at the facilities of Bayou Steel at Mile 132.4 above Head of Passes (AHP) on the Mississippi River, a location within St. John the Baptist Parish near LaPlace, Louisiana. But, at the time of the accident the barge was not at that location. The vessel had been moved to the Convent Marine Terminal, a facility located 35 miles upriver in Ascension Parish at Mile 168 AHP. Although Mr. Pike, the vice-president of Ocean Marine, denied having any knowledge of this move until much later, Ocean Marine conceded in its Memorandum in Support of Motion for Summary Judgment that this fact was made known to Mr. Pike on November 20, 1986, the same day as the accident.
Notice of the potential defense to coverage under the policy was also provided by service of the petition upon Ocean Marine on September 18, 1987. The petition clearly stated that the accident occurred in Ascension Parish, not in St. John the Baptist Parish. The petition also indicated that plaintiff was employed by Convent Marine, a fact later made even more evident by the intervention of Commercial Union Insurance Co., the compensation insurer of Convent Marine. Moreover, venue would only be proper in Ascension Parish if it were the parish where the accident occurred since neither the plaintiff nor any of the defendants were domiciled there.
Notwithstanding these unequivocal indications of an apparent violation of the navigation warranty, the insurer named Evans & Co to represent both itself and Masco without reservation of the right to deny coverage under the policy. Evans & Co. first appeared as counsel of record for Masco on September 29, 1987, when it filed a motion for an extension of time to answer the petition. Evans & Co. then met with Mr. Massi, Masco's president, to discuss the particulars of the accident and to review all pertinent company records. Mr. Massi stated that he informed Evans & Co. of precisely the location of the accident. The law firm continued its representation of Masco by participating in discoveryit propounded interrogatories to the plaintiff on December 1, 1987, it answered plaintiff's interrogatories on December 22, 1987 and it filed a motion to compel full and complete answers and responses to Masco's and Ocean Marine's interrogatories on January 21, 1988. Additionally, on February 26, 1988, the law firm answered the petition of intervention on behalf of both Masco and Ocean Marine.
The insurers contend that they undertook a prompt investigation into the facts and circumstances surrounding the claim. However, though the accident site was easily ascertainable, it was not until March 2, 1988 that Ocean Marine denied coverage to Masco on the grounds that Masco had breached the navigation warranty. Approximately six months after assuming the defense of both Masco and Ocean Marine, Evans & Co. withdrew as counsel for Masco but remained in the case as representative of Ocean Marine. After reviewing the record, briefs and depositions in this case, we find that Ocean Marine and its attorneys possessed facts indicating a possible defense to coverage based on a breach of the navigation warranty at the outset of this litigation.
Finally, it is undisputed that Ocean Marine did not reserve its right to deny coverage under the policy prior to assuming the defense of Masco. Nor did Ocean Marine provide Masco separate counsel in order to avoid a potential conflict of interest. Accordingly, because the insurer assumed the defense without reserving its rights or otherwise protecting its interests and continued to represent the insured when its own interests were adverse to the insured, we find that Ocean Marine waived any coverage defense it may have had under the policy.

Attorney's fees
The trial court awarded attorney's fees to Masco and Martin as "damages incurred as a *1218 result of the insurers' denial of coverage." The court of appeal reversed the award of attorney's fees.
It is well settled that attorney's fees are awarded only when authorized by contract or statute. State, through DOTD v. Williamson, 597 So.2d 439, 441 (La.1992); McDill v. Utica Mut. Ins. Co., 475 So.2d 1085 (La. 1985); General Motors Acceptance Corp. v. Meyers, 385 So.2d 245, 247 (La.1980); Maloney v. Oaks Builders, Inc., 256 La. 85, 235 So.2d 386 (1970); Hernandez v. Harson, 237 La. 389, 111 So.2d 320 (1958).
Under the terms of its protection and indemnity policy, the insurer contractually agreed to provide a legal defense for liability claims against the insured within the scope of the policy. The insurer's duty to defend suits brought against its insured is determined by the allegations of the plaintiff's petition, with the insurer being obligated to furnish a defense unless the petition unambiguously excludes coverage. Meloy v. Conoco, Inc., 504 So.2d 833, 838 (La.1987); American Home Assurance Co. v. Czarniecki, 255 La. 251, 230 So.2d 253 (1969); Leon Lowe & Sons, Inc. v. Great American Surplus Lines Ins. Co., 572 So.2d 206 (La. App. 1st Cir.1990); Benoit v. Fuselier, 195 So.2d 679 (La.App. 3d Cir.1967). Accordingly, the insurer's obligation to defend suits against its insured is generally broader than its obligation to provide coverage for damage claims. Czarniecki, supra 230 So.2d at 259. Thus, if, assuming all of the allegations of the petition to be true, there would be both coverage under the policy and liability of the insured to the plaintiff, the insurer must defend the insured regardless of the outcome of the suit. Id. An insured's duty to defend arises whenever the pleadings against the insured disclose even a possibility of liability under the policy. Meloy, supra.
In this case the insurer made its own determination that the petition did not unambiguously exclude coverage by undertaking the defense and answering the petition. Ocean Marine has failed to identify anything in the plaintiff's petition which unambiguously excludes coverage. Therefore, it owed Masco a defense with respect to the main demand. The insurers' failure to defend Masco on the allegations of the plaintiff renders them liable for attorney's fees incurred by Masco in defense of the negligence action. See Czarniecki, supra; Wainwright v. Moreno's, Inc., 602 So.2d 734 (La.App. 3d Cir. 1992); Leon Lowe & Sons, Inc. v. Great American Surplus Lines Ins. Co., 572 So.2d 206 (La.App. 1st Cir.1990); Dugas Pest Control of Baton Rouge, Inc. v. Mutual Fire, Marine and Inland Ins. Co., 504 So.2d 1051 (La.App. 1st Cir.1987).
However, the insurance contract did not impose a duty on the insurer to pay attorney's fees in connection with the insured's pursuit of the coverage issue. Nor are we directed to any statute providing for attorney's fees in this instance. Generally, if the insured hires an attorney to represent him in coverage disputes, he will have to bear those costs himself. Dugas Pest Control, supra; Clarke v. Fulkerson, 378 So.2d 561 (La.App. 3d Cir.1979); Breitenbach v. Green, 186 So.2d 712 (La.App. 4th Cir.1966); National Union Fire Ins. Co. v. Circle Inc., 915 F.2d 986 (5th Cir.1990). Therefore, we hold that Masco is entitled only to the attorney's fees incurred in defending the main demand.
Martin Insurance Agency, as the agent for Masco, had no contract with the insurer. Nor is there any statutory basis for awarding attorney's fees to Martin in this case. Therefore, we conclude that Martin is not entitled to attorney's fees.

Conclusion
Masco demonstrated that there is no genuine issue as to any material fact regarding the question of waiver and that it was entitled to judgment that Ocean Marine wrongfully denied coverage as a matter of law. Therefore, the trial court's summary judgment to this effect was correct. Accordingly, the court of appeal judgment of reversal is vacated, and the trial court judgment is fully reinstated, except as to the awards of attorney's fees.
The judgment of the court of appeal denying attorney's fees incurred by Martin and Masco in pursuing the issue of insurance coverage is affirmed. The judgment of the court of appeal denying Masco's attorney's fees incurred in defending the principal demand *1219 is reversed. The case is remanded for a redetermination and award of attorney's fees to Masco in connection with its defense of the principal demand.
REVERSED IN PART, AFFIRMED IN PART, AND REMANDED.
MARCUS, J., concurs and assigns reasons.
ORTIQUE, J., concurs in the result and assigns reasons.
MARCUS, Justice (concurring).
I agree with the result reached by the majority opinion. However, I would not reach, much less decide, whether the assumption or continuation of the insured's defense by the insurer constitutes waiver. Rather, I believe that the insurer's retroactive approval of prior breaches of the navigation warranty and its agreement to extend coverage for future breaches for an additional premium constituted a waiver of the navigation warranty. Accordingly, I respectfully concur.
ORTIQUE, Justice (concurring).
Existing Louisiana jurisprudence sets forth the rule of law that a waiver of an insurer's policy defense occurs when there is an existing right, a knowledge of its existence and an actual intention to relinquish it or conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished. Tate v. Charles Aguillard Ins. & Real Estate, Inc., 508 So.2d 1371 (La.1987). In my opinion, Ocean Marine's knowledge of facts clearly showing it could claim non-coverage, combined with its actions which were indicative of an intent to forego enforcement of the right to claim non-coverage for breach of the navigation warranty, induced Masco to believe Ocean Marine had waived enforcement of the warranty sufficient to preclude it from utilizing the policy defense. To reach this conclusion, it is unnecessary to create new case law. Tate provides all necessary precepts. Therefore, it is my opinion that the majority erred by addressing and creating law on the particularized issue of waiver based upon an assumption or continuation of the insured's defense.
The record shows Ocean Marine insurance contract with Masco in effect on the date of the accident, November 20, 1986, contained a navigation warranty for the barge to be in port at Bayou Steel, mile 132.4 AHP. Ocean Marine was charged with the knowledge of this policy provision. Further, its vice-president knew on or about November 20, 1986, that on the date of the accident the barge was actually in port at Convent Marine, 168 AHP, a facility located 35 miles upriver from the warranted location. Nonetheless, Ocean Marine did not avoid the policy or deny coverage for the breach of the navigation warranty until March 2, 1988, approximately 15½ months after plaintiff's accident.
Further, Ocean Marine's standard behavior with Masco was to retroactively approve prior breaches of the policy's navigation warranty. It also disclosed to Masco's broker in writing its willingness to provide insurance coverage for future breaches of the navigation warranty.[1] This pattern of conduct was consistent with the rationale that technical breaches of the navigation warranty through the change of where a vessel is in port does not increase the insurer's risk as compared to the increase in risk created when a vessel is in navigation instead of in port. See Employers Ins. of Wausau v. Trotter Towing Corp., 834 F.2d 1206 (5th Cir.1988); Lexington Ins. Co. v. Cooke's Seafood, 835 F.2d 1364 (11th Cir.1988). It is the intended use of a vesselwhether for port status or for one of the various types of navigational statuseswhich affects the risk and, consequently, the fixing of the premium. Ocean Marine's risk increased when Masco's barged was being moved, but not by the port to which it had already been moved.
It is my belief that resolution of this case does not necessitate an expansion of the law beyond the legal parameters set forth in Tate v. Charles Aguillard Ins. & Real Estate, *1220 Inc., supra. Since Ocean Marine's objective behavior as described above was so inconsistent with an intent to enforce the warranty as to induce a reasonable belief that the right to enforce it had been relinquished, under the legal precepts established in Tate, Ocean Marine's actions constituted a waiver of its right to enforce the navigation warranty.
As existing Louisiana jurisprudence is dispositive, it is unnecessary to create additional legal precepts regarding waiver and the assumption or continuation of an insured's defense. Therefore, the majority erred in enlarging the law on waiver by addressing the particular aspect of waiver based upon the assumption or continuation of the insured's defense.
Consequently, I respectfully concur with the result reached by the majority.

OPINION DENYING REHEARING
PER CURIAM.
The applications for rehearing are denied.
Certain Underwriters at Lloyds, London (Lloyd's) for the first time in this court seeks to have us recognize as crucial the difference between its position, as the excess insurer of Masco Construction Company, Inc. (Masco), and that of Ocean Marine Indemnity Company (Ocean Marine), as the primary insurer of Masco. Previously, Lloyd's had "adopt[ed] the issues, arguments and exhibits set forth in the Reply Brief, filed on behalf of Ocean Marine Indemnity Company and Gulf Coast Marine, Inc., arguments and exhibits being incorporated herein by reference as if copied herein in extenso." We perceive the distinction but do not think that it requires a different result as to the excess carrier in the present case.
The plaintiff's original petition put Ocean Marine and Lloyd's on notice that Masco had breached the navigation warranty by moving the barge away from its designated site of confinement just before the accident happened. The undisputed fact that the barge was not at the stipulated location when the accident occurred was not only evident from the pleadings but also susceptible of immediate and certain verification. Thus the place of the accident and Masco's breach of the warranty were crystal clear to the insurers from the start of this litigation. Therefore, Lloyd's either knew or should have discovered, with the exercise of reasonable diligence, that Ocean Marine had waived two prior breaches of the navigation warranty by agreeing to after-the-fact changes in the stipulated location and that Ocean Marine undertook and continued to conduct the defense of Masco for some six months without disclaiming coverage or reserving the right to do so. In fact, nothing in the voluminous record of the summary judgment proceeding indicates that Lloyd's was not apprised of each of these events soon after its occurrence. Yet, Lloyd's did nothing during this period to indicate to Masco that it would take the position that the excess coverage had been forfeited by Masco's violation of the navigation warranty. Consequently, Lloyd's waived the breach of warranty because "[w]aiver occurs when there is an existing right, a knowledge of its existence and an actual intention to relinquish it, or conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished." Tate v. Charles Aguillard Ins. & Real Est., 508 So.2d 1371 (La.1987).
WATSON, J., concurs in the denial with reasons.
LEMMON, J., not on panel.
WATSON, Justice, concurring in the denial:
I join the denial of rehearing and assign the additional reason that the violation, if any, of the navigational warranty did not contribute to this accident.
NOTES
[*] Lemmon, J., not on panel. Rule IV, Part 2, § 3.
[1] A cover letter from Al Pike, vice-president of Reliance, directed to Clyde Milam, Masco's insurance broker, and accompanying Endorsement No. 3, the authorization for the barge to move back to Bayou Steel which was effective November 20, 1986, stated "that should another move be required, we will require an additional premium of a flat $500.00."