669 So.2d 493 (1996)
Christopher V. FONTAINE
v.
The ROMAN CATHOLIC CHURCH OF the ARCHDIOCESE OF NEW ORLEANS, St. Rita Church of New Orleans, Father Dino Cinel, et al.
No. 94-CA-1772.
Court of Appeal of Louisiana, Fourth Circuit.
January 31, 1996.
Writ Denied April 8, 1996.
Arthur A. Lemann, III, Arthur A. Lemann, IV, New Orleans and Edwin A. Stoutz, Jr., New Orleans, for Plaintiff/Appellant.
Thomas E. Loehn, Boggs, Loehn & Rodrigue, New Orleans, for Defendants/Appellees.
Before SCHOTT, C.J., BYRNES, LOBRANO, JONES and MURRAY, JJ.
SCHOTT, Chief Judge.
This is a claim by Dino Cinel against United States Fidelity and Guaranty Company (USF & G) for the costs Cinel allegedly *494 incurred defending himself against claims made against him by Christopher Fontaine. Fontaine alleged that Cinel, a Roman Catholic priest, committed illicit sexual acts upon him. USF & G insured the Roman Catholic Archdiocese and any employee "while acting within the scope of his duties as such." The trial court granted USF & G's motion for summary judgment and Cinel has appealed. The issue is whether Fontaine's petition as amended unambiguously excluded coverage so as to relieve USF & G of furnishing a defense to Cinel. We affirm.
The litigation began when Fontaine filed suit in November 1989 against Cinel, St. Rita's Church of New Orleans, The Archdiocese of New Orleans, and several insurers including USF & G. Following dismissal of the suit on exceptions of prescription and summary judgment Fontaine took an appeal to this court. (Fontaine v. Roman Catholic Church, 625 So.2d 548 (La.App. 4th Cir. 1993), writ denied 630 So.2d 787).
As can be seen from that earlier opinion, hereinafter referred to as Fontaine I, Fontaine asserted three causes of action: sexual abuse, clergy malpractice, and invasion of privacy. These were based upon allegations that while Cinel was a Catholic priest assigned to St. Rita's parish, Fontaine had an ongoing relationship with Cinel in which Cinel performed illicit sexual acts upon him at the St. Rita's rectory between 1982 when Fontaine was seventeen years of age until late 1985 or early 1986. Fontaine further alleged that Cinel made videotapes and took photographs of him while being sexually abused and Cinel marketed these for publication without his consent. Fontaine alleged he found out about the invasion of his privacy when in August 1989 he saw a Dutch magazine devoted entirely to photographs of him taken by Cinel.
In Fontaine I, this court held that Fontaine's claims of sexual abuse and clergy malpractice had prescribed. As to the invasion of privacy claim the trial court found that Fontaine only discovered this cause of action when he saw the photographs of himself in the Dutch magazine. So it had not prescribed. But the trial court had also found that sale of the photographs for publication had nothing to do with the church defendants so the court granted summary judgment in their favor leaving Fontaine's invasion of privacy claim against Cinel individually as the only one remaining. This court reversed the summary judgment reasoning that the church defendants either knew or should have known of many of the activities performed by Cinel at the rectory between 1982 and 1986 which ultimately resulted in damage to Fontaine because of the invasion of his privacy. The court held that this could result in liability of the church defendants, either vicariously or independently.
Fontaine I was handed down by this court on September 30, 1993, and it became final when the Supreme Court denied Fontaine's application for a writ of review on January 28, 1994. As the case was about to go to trial on February 14, 1995, it was settled. A substantial sum was paid to Fontaine, and, in exchange, he furnished a complete release to all defendants including Cinel. In the meantime, in May 1993, USF & G had filed a motion for summary judgment against Cinel, and on January 31, 1994, the trial court dismissed his claim for the costs of his defense.
Cinel took the present appeal from that judgment and the record was lodged in this court on September 8, 1994. Oddly, on November 3, Fontaine, filed a brief seeking reversal of the judgment to which he was not a party. On the same day Cinel filed a motion to dismiss his appeal, but the order was not signed because Fontaine opposed it. On February 1, Cinel moved to withdraw his motion to dismiss his appeal and on February 14 Fontaine withdrew his appearance in this court.
Arguably, this court could have granted Cinel's motion and dismissed his appeal without regard to Fontaine's appeal on the theory that Fontaine was no more than an interloper without any standing in this court. In that case Cinel's appeal would have been dismissed on his own judicial acknowledgment that he wished to abandon his appeal. Nonetheless, Cinel's appeal was not formally dismissed, and we can only speculate on the *495 reasons for these strange developments as we consider the merits of Cinel's appeal.
In his brief Cinel, in the statement of the case says, his claims arose out of a four year "intimate relationship" with Fontaine throughout which Fontaine "lived at times with Cinel at the St. Rita Rectory." He says this "relationship" included sex and taking pornographic and videotapes which Cinel sent to a Danish publisher. The publication of this material in a magazine became "the raison d'etre of Fontaine's invasion of privacy claims."
Cinel's first argument is that this court's decision in Fontaine I to the effect that Fontaine's claim against the church defendants based upon vicarious liability was not properly disposed of on a motion for summary judgment governs the present case. He invokes the law of the case doctrine on the theory that the present claim is the same as the one previously before this court. This argument is clearly without merit because it rests on the erroneous theory that we are now confronting the same legal question as we confronted previously.
In Fontaine I, the court considered the issue of vicarious liability on the part of the church under the provisions of LSA-C.C. Art. 2320 which provides that "employers are answerable for the damage occasioned by their servants ... in the exercise of the functions in which they are employed." On the basis of jurisprudence interpreting this article the court held that there were issues of material fact on the issue of whether or not that Cinel's "functions" of employment by the church as a Catholic priest might somehow include taking pornographic pictures of Fontaine and selling them to an international commercial purveyor of this obscene material so as to make the church defendants liable.
In the present case the issue is altogether different. We are dealing with an insurance policy which provides insurance to a church employee only "while acting within the scope of his duties as such." Since an insurance policy is a contract we need look only to the law governing the interpretation of contracts found in C.C. Arts. 2045 et seq. These codal provisions stand on their own. When the words of a contract are clear and lead to no absurd consequences, no further interpretation may be made in search of the parties intent. Art. 2046. The words of a contract must be given their generally prevailing meaning. Art. 2047. It is perfectly obvious from the plain wording of the insurance policy that Cinel was not acting within the scope of his duties as a Roman Catholic priest when he was engaging in this vile conduct with Fontaine and peddling pornography featuring Fontaine.
Cinel's other argument is that USF & G's duty to defend him was automatically triggered by the allegations of Fontaine's petition. This constitutes an oversimplification of the law on the insurer's duty to defend. In Cinel's brief he cites Steptore v. Masco Const. Co. Inc., 643 So.2d 1213 (La.1994) which reiterated the law governing the insurer's duty to defend as follows:
The insurer's duty to defend suits brought against its insured is determined by the allegations of the plaintiff's petition, with the insurer being obligated to furnish a defense unless the petition unambiguously excludes coverage ... an insurer's duty to defend arises whenever the pleadings against the insured disclose even a possibility of liability under the policy.

Steptore at 1218.
When Cinel called upon USF & G to defend him on the basis of Fontaine's allegations, what did USF & G find? The alleged tort was the violation of Fontaine's privacy by Cinel. This consisted of Cinel's taking pornographic pictures of Fontaine when Fontaine was visiting Cinel at his room in the rectory of a parish of the Archdiocese of New Orleans and Cinel's later selling this obscene material to a foreign purveyor of pornography which in turn published the pictures. Having considered these allegations USF & G's next responsibility was to look at the insurance policy it issued to the Archdiocese of New Orleans in order to determine whether Cinel was an insured under that policy. The policy extended coverage to Cinel, i.e., Cinel would qualify as an insured, only for the acts he performed "while acting within the scope of his duties as" a Roman Catholic *496 priest of the Archdiocese. From a practical, common-sense point of view it is perfectly obvious that Cinel was not an insured under the circumstances. How can it be said that the scope of Cinel's duties as a priest of the Archdiocese included his participation in lewd and lascivious conduct with Fontaine? Such conduct was the antithesis of that which comprised his duties as a diocesan priest. Obviously, those duties contemplate the continuous fostering of morality and obedience to the natural law. The policy unambiguously excluded coverage. The allegations did not disclose even the possibility of USF & G's liability for Cinel's corrupt behavior.
There was another suit brought against Cinel in the federal court by one Ronald Tichenor for the same type of sordid conduct with Tichenor when Cinel was supposed to be functioning as a Catholic priest at the St. Rita Rectory. The same issue we are presently considering was before the federal court. The district court and the United States Court of Appeals reached the same conclusion as we have. In finding no duty to defend Cinel on the part of USF & G, the court in Tichenor v. Roman Catholic Church of New Orleans, 32 F.3d 953 (5th Cir.1994).
... the policy on which Cinel relies is not between him and USF & G, it is between USF & G and the Archdiocese. In this structure, Cinel is a third party beneficiary who receives coverage only when he acts within his duties. (Emphasis ours).
The trial court was eminently correct in dismissing Cinel's demand on appellee's motion for a summary judgment. This is so because there are no genuine issues of material fact and appellee is entitled to judgment as a matter of law. Under the plain language of the contract appellee issued to the Archdiocese, it did not insure Cinel for his depraved conduct because this conduct was not only beyond the scope of his duties as a priest, but was inimical to and in blatant violation of those duties. It would be a clear aberration to require the insurer of the Archdiocese to defend Cinel against the charges brought against him by Fontaine. Cinel was afforded insurance for acts within the scope of his priestly duties, not for the kind of deviant behavior he engaged in with Fontaine.
The judgment appealed from is affirmed.
AFFIRMED.
JONES and MURRAY, JJ., dissent.
JONES, Judge, dissenting.
USF & G concedes that the courts can only determine whether Cinel is an "insured" by looking beyond the allegations of the petition. Because this Court, in its prior judgment, found that plaintiff presented allegations of a continuing tort, determinations of when the invasion of privacy occurred and whether it occurred during the course and scope of Cinel's employment are factual issues. See: Fontaine v. The Roman Catholic Church of the Archdiocese of New Orleans, et al., 625 So.2d 548 (La.App. 4th Cir.1994) writ denied 630 So.2d 787 (La.1994). Therefore, this matter is not ripe for summary judgment. The trial court erred in finding otherwise.
When this matter was before this Court on application for supervisory writs this Court addressed the issue of whether the church defendants were entitled to summary judgment as to the invasion of privacy issue. This court wrote:
... Fontaine claims that the church defendants either knew or should have known of many activities performed by Cinel between February of 1982 and late 1985 or early 1986. Many of those exact activities, Fontaine alleges, ultimately resulted in damage to him because of the invasion of his privacy. Under this theory of the case, the church defendants could be liable, either vicariously or independently.
Fontaine at 555. The church defendants applied for writs to the Supreme Court and their application was denied. By former judgment of this Court, the issue of the church defendants' liability, as invoked by a "continuing tort" principle claiming that Cinel's distribution of the photographs was simply the last action in a series of occurrences which resulted in Fontaine's damages, must be resolved before this matter can be dismissed on summary judgment. This constitutes the law of the case and Cinel is correct *497 that the trial court erred in granting USF & G's Motion for Summary Judgment without first resolving this genuine issue of material fact.
I would reverse the trial court's summary judgment in favor of USF & G and remand this matter for further proceedings to resolve a genuine issue of material fact, namely whether plaintiff's continuing tort theory has merit.