# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-30003
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

August 1, 2016

Lyle W. Cayce
Clerk

RAYLIN RICHARD,

> Plaintiff

v.

DOLPHIN DRILLING LIMITED; SMITH INTERNATIONAL, INCORPORATED,

> Defendants - Appellants

OFFSHORE ENERGY SERVICES, INCORPORATED,

> Third Party Defendant - Appellant

v.

VALIANT INSURANCE COMPANY,

> Third Party Defendant - Appellee

Appeal from the United States District Court
for the Western District of Louisiana

Before WIENER, HIGGINSON, and COSTA, Circuit Judges.

STEPHEN A. HIGGINSON, Circuit Judge:

This case asks us to resolve a contract dispute between an insurer—Valiant Insurance Company—and the insured—Offshore Energy Services. The

No. 16-30003

question is whether Valiant, as an excess insurer on a marine insurance policy, is required to reimburse Offshore for payments in a personal injury settlement. The district court granted summary judgment for Valiant, holding that an exclusion in the insurance policy precludes coverage.

## I. Background

This case arises out of personal injuries sustained by Raylin Richard, an Offshore employee, while working on a drillship in the Gulf of Mexico in 2009. Richard sued in January 2011, and Offshore was brought into the suit in August 2011 as a third-party defendant. Offshore brought a cross claim against Liberty Mutual Insurance Company, its primary insurer, in September 2012, and against Valiant, its excess insurer, in January 2014—three years after Richard filed suit. Valiant answered in April 2014, asserting, among other defenses, that under Exclusion 11(d) of its policy with Offshore, which we refer to as the drilling rig exclusion, Valiant did not owe coverage for "any liability for, or any loss, damage, injury or expense caused by, resulting from or incurred by reason of any liability or expense arising out of the ownership, use, or operation of drilling rigs . . . ." Offshore eventually settled with Richard, but maintained its action for reimbursement against Liberty and Valiant. This appeal involves only Offshore's claim against Valiant.

Valiant moved for summary judgment, arguing that the drilling rig exclusion unambiguously precluded coverage for Richard's accident, which occurred on a drillship, a type of drilling rig. Offshore disagreed, claiming that, among other things, (1) a drillship is not a drilling rig; (2) the drilling rig exclusion does not preclude coverage, and applying it in the manner Valiant suggests would lead to an absurd result because the policy would not cover much; and (3) Valiant waived its right to assert coverage defenses by failing to issue a reservation of rights letter and waiting until April 2014 to raise its

policy defenses, including the drilling rig exclusion. The district court granted summary judgment for Valiant, rejecting Offshore's affirmative defense of waiver and finding that the "drilling rig exclusion applies to the claims at issue in this case and is a bar to coverage." Offshore timely appealed. After reviewing the briefs and record, we AFFIRM the district court's grant of summary judgment for Valiant.

## II. Discussion

### A.

We review de novo a grant of summary judgment, applying the same standards as the district court. *Malin Int'l Ship Repair & Drydock, Inc. v. Oceanografia, S.A. de C.V.*, 817 F.3d 241, 249 (5th Cir. 2016). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

### B.

The parties agree that Louisiana law applies. "To determine Louisiana law, we look to the final decisions of the Louisiana Supreme Court." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007). "In the absence of a final decision by the Louisiana Supreme Court, we must make an *Erie* guess and determine, in our best judgment, how that court would resolve the issue if presented with the same case." *Id.* In the absence of a state supreme court opinion, we look to the state intermediary courts "as the strongest indicator of what a state supreme court would do, absent a compelling reason to believe that the state supreme court would reject the lower courts' reasoning." *Hux v. S. Methodist Univ.*, 819 F.3d 776, 780–81 (5th Cir. 2016).

No. 16-30003

Under Louisiana law, "[a]n insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code." *Cadwallader v. Allstate Ins. Co.*, 848 So. 2d 577, 580 (La. 2003). "This court's role in interpreting insurance contracts is 'to ascertain the common intent of the parties to the contract.'" *Cash v. Liberty Ins. Underwriters, Inc.*, 624 F. App'x 854, 858–59 (5th Cir. 2015) (unpublished) (quoting *Cadwallader*, 848 So. 2d at 580). "The parties' intent, as reflected by the words of the policy, determine[s] the extent of coverage." *Reynolds v. Select Props., Ltd.*, 634 So. 2d 1180, 1183 (La. 1994). Finally, "[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ. Code art. 2046.

The drilling rig exclusion states:

III.   Exclusions

    A.   This insurance does not apply to:

        . . . .

        11.   Any liability for, or any loss, damage, injury or expense caused by, resulting from or incurred by reason of:

            . . . .

            d.   any liability or expense arising out of the ownership, use or operation of drilling rigs, drilling barges, drilling tenders, platforms, flow lines, gathering stations and/or pipelines, but this exclusion shall not apply to craft serving the foregoing such as crew, supply, or utility boats, tenders, barges or tugs.

4

No. 16-30003

The district court found that the accident giving rise to this litigation occurred on a drilling rig, a term that "clearly encompasses" drillships.[1] The district court then held that the above exclusion precluded coverage for Richard's accident because the accident occurred on a "drilling rig." In reaching its conclusion, the district court looked to this court's unpublished opinion in *Cash*, which held that an identical exclusion precluded coverage under similar circumstances.

In *Cash*, a worker was injured "while being transferred by crane from a platform to a supply vessel." 624 F. App'x at 855. The excess insurance policy in *Cash* contained an identical exclusion to the policy here. Based on that exclusion, we concluded from the plain language of the policy "that the parties intended to exclude platforms from coverage." *Id.* at 860. We reasoned that "[i]f the parties had intended for the use or operation of the platforms to be covered under the policy, they could have drafted the contractual language that way or omitted the term 'platform' from the exclusions section, but they did not." *Id.* We based our decision in *Cash* in large part on a Louisiana Court of Appeals case that reached the same conclusion—*Janex Oil Co. v. Hanover Compressor Co.*, 694 So. 2d 415, 416 (La. App. 4 Cir. 1997). The court in *Janex* faced a nearly identical exclusion, and likewise held that "the purpose of this exclusion was to limit coverage to vessels while excluding drilling platforms." *Id.*; *see also Underwriters at Lloyd's London v. OSCA, Inc.*, No. 03-20398, 2006 WL 941794, at *23 (5th Cir. Apr. 12, 2006).

Offshore urges us not to follow our previous holding in *Cash* because, as an unpublished case, it is not binding precedent under Fifth Circuit Rule 47.5.4. While Offshore is correct, we find *Cash*'s reasoning compelling and hold

---

[1] Offshore argues in passing that the term drilling rig might not encompass drillships, but offers no authority or persuasive reasoning for what it agrees would be a "fine distinction." We are not persuaded by Offshore's argument.

that the district court was correct in finding that the drilling rig exclusion in Valiant's policy precluded coverage for Richard's accident. As in *Cash*, we are unpersuaded by Offshore's argument that construing the plain language of the exclusion in this way will lead to "absurd consequences" prohibited by La. Civ. Code art. 2046. Offshore cites two cases in support. While *Clovelly Oil Co., LLC v. Midstates Petroleum Co., LLC*, 112 So. 3d 187, 192 (La. 2013) stands for the general proposition that courts should refrain from construing a contract in a manner that leads to absurd results, the specific facts of that case provide no support to Offshore. The issue in *Clovelly* was whether a lease acquired in 2008 by one of two parties to a 1972 joint operating agreement was covered by the 1972 agreement. In *Ins. Office of Am., L.L.C. ex rel. S R M Props., L.L.C. v. H I Insulation, L.L.C.*, 462 F. App'x 434, 437 (5th Cir. 2012) (unpublished) we held that "interpreting an insurance policy to provide coverage for a non-existent entity" would lead to an absurd consequence under Louisiana law. Here, however, there is no question that Offshore purchased coverage for work its employees actually carried out. The only question is what amount or percentage of this work was not covered due to the exclusion's drilling rig exception. Even accepting Offshore's assertion that it did "99% of its business servicing the offshore oil industry," that would not necessarily mean that the exclusion leads to absurd results, for two reasons. First, the exclusion is clear that it only covers the "ownership, use or operation of drilling rigs, drilling barges, drilling tenders, platforms, flow lines, gathering stations and/or pipelines," and Offshore's claim that it does 99% of its business *servicing* the oil industry is not the same as a claim that 99% of its business involves the "ownership, use or operation of drilling rigs . . . ." Second, the exclusion does "not apply to craft serving [drilling rigs, drilling barges, drilling tenders, platforms, flow lines, gathering stations and/or pipelines] such as crew, supply, or utility boats, tenders, barges or tugs." It is unclear how much of Offshore's

business "servicing the offshore oil industry" falls within this exception to the exclusion. Of course, as in *Cash*, to avoid this very situation we reiterate that if parties do not wish for the exclusion to apply to accidents on drilling rigs or on drilling barges or on other listed locations, then they are free to contract accordingly. *See Cash*, 624 F. App'x. at 860.

We are similarly unpersuaded by Offshore's waiver argument:  that by waiting until 2014 to raise its policy defenses, including the drilling rig exclusion, and not previously issuing a reservation of right letter, Valiant waived its right to assert coverage defenses. Under Louisiana law, "[w]aiver occurs when there is an existing right, a knowledge of its existence and an actual intention to relinquish it or conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished." *Steptore v. Masco Constr. Co.*, 643 So. 2d 1213, 1216 (La. 1994). The district court concluded that Valiant possessed an existing right under the policy and knew of the right,[2] satisfying the first two *Steptore* elements, but did not relinquish its rights based on actual intention or conduct—the third *Steptore* element.

Offshore relies almost exclusively on *Steptore* itself to support its argument that "Valiant's failure to notify [Offshore] of its intent to rely on the drilling rig exclusion . . . for three years . . . resulted in a reasonable belief by [Offshore] that Valiant did not intend to assert coverage defenses." Offshore's primary argument is relinquishment based on conduct.[3] In *Steptore*, the

---

[2] The district court found that Valiant received notice of the accident in 2011, even though it did not become a party to the lawsuit until 2014.

[3] Offshore also urges this court to find that Valiant had an actual intention to relinquish its rights based on the testimony of John Moy, a Valiant underwriter. According to Offshore, Moy negotiated with Offshore for its insurance business and was the Valiant employee who received the 2011 notice of Richard's accident. Based on these facts, Offshore concludes that Valiant had "an intent to specifically insure companies like [Offshore] in situations where accidents occurred during their work on . . . drillships." The district court

No. 16-30003

Louisiana Supreme Court held that "when an insurer, with knowledge of facts indicating noncoverage under the insurance policy, *assumes or continues the insured's defense without obtaining a nonwaiver agreement to reserve its coverage defense*, the insurer waives such policy defense." *Id*. (emphasis added). Here, the district court distinguished *Steptore*, reasoning that because Valiant never assumed the defense of Offshore, "Valiant's failure to issue a reservation of rights letter, without more, does not constitute conduct inducing a reasonable belief in waiver under *Steptore*." We likewise find *Steptore* distinguishable. The plaintiff in *Steptore* filed suit against both the primary and excess insurers, making the excess insurer a full participant in the case from the beginning of the lawsuit. *Id*. at 1214–15. Here, as mentioned, Valiant was not made a party to this case until three years after the initial suit. Thus, as the district court pointed out, "there is no evidence before the court to suggest that Valiant ever assumed the defense of [Offshore]."

Offshore responds by pointing to *Steptore*'s Opinion Denying Rehearing, where the excess insurer for the first time asked the court to draw a distinction between primary and excess insurers. *Id*. at 1220. The *Steptore* court declined based on the facts presented in that case. *Id*. We are not persuaded that this rehearing denial aids Offshore here. There is no question that in *Steptore* the excess insurer was involved in the case from the beginning where, as here, Valiant did not become a party to the suit until years later. In sum, we agree

_____

rejected this argument, based in part on its conclusion that Moy's testimony was "parol evidence of the policy's meaning." We agree that Moy's testimony on his personal understanding of the Valiant policy does not establish Valiant's actual intention to relinquish its right to assert policy defenses. Valiant did not become a party to the litigation until 2014, and it asserted its policy defenses, including the drilling rig exclusion, in its answer three months later. We do not think that Moy's understanding of the Valiant policy and his receipt of the 2011 notice established an actual intention to relinquish Valiant's right to assert policy defenses when Valiant was not yet a party to the litigation and, thus, had not been required to provide its policy defenses.

with the district court that "the facts as alleged by [Offshore] do not show conduct which . . . would induce a reasonable person to conclude that Valiant waived its coverage defenses under the policy at issue in this case."

## III. Conclusion

For the foregoing reasons, the judgment of the district court is AFFIRMED. Valiant's opposed motion to strike portions of the record on appeal is DENIED.