JAMES F. WILLEFORD     *     NO. 2024-C-0489

VERSUS     *

    **COURT OF APPEAL**

PRIVILEGE UNDERWRITERS     *
RECIPROCAL EXCHANGE     **FOURTH CIRCUIT**

    *

    **STATE OF LOUISIANA**

* * * * * * *

APPLICATION FOR WRITS DIRECTED TO
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2023-03505, DIVISION "B"
Honorable Marissa Hutabarat,
* * * * * *
**Judge Sandra Cabrina Jenkins**
* * * * * *
(Court composed of Judge Sandra Cabrina Jenkins, Judge Tiffany Gautier Chase,
Judge Rachael D. Johnson)

John W. Waters, Jr.
David E. Walle
BIENVENU, FOSTER, RYAN & O'BANNON, LLC
1100 Poydras Street, Suite 2870
New Orleans, LA 70163

       COUNSEL FOR PLAINTIFF/RELATOR

Mark C. Dodart
Virginia P. Stewart
PHELPS DUNBAR, LLP
Canal Place | 365 Canal Street, Suite 2000
New Orleans, Louisiana 70130

       COUNSEL FOR DEFENDANT/RESPONDENT

          **WRIT GRANTED.**
          **JUDGMENT VACATED.**
          **SEPTEMBER 27, 2024**

The plaintiff/relator, James F. Willeford, seeks review of the trial court's July 29, 2024 judgment granting in part, and denying in part, his Motion for Appointment of an Umpire. The trial court denied the plaintiff's request for appointment of an umpire and ordered the defendant, Privilege Underwriters Reciprocal Exchange, to select an appraiser pursuant to the appraisal provision in the homeowners' policy issued to the plaintiff. For the following reasons, we grant the writ application and vacate the trial court's judgment.

## PROCEDURAL HISTORY

Plaintiff, James F. Willeford, filed suit against his homeowners' insurer, Privilege Underwriters Reciprocal Exchange (PURE), alleging that PURE failed to adequately reimburse him for damages sustained to his house as a result of Hurricane Ida. He asserted that he and PURE could not agree on the amount of the loss. Prior to filing suit, the plaintiff invoked the appraisal provision of the homeowners' insurance policy and requested his claim be submitted to the

1

appraisal process.  PURE refused to participate, averring that invocation of the appraisal provision was premature.

After suit was filed, the plaintiff filed a Motion for Appointment of an Umpire.  He alleged that he had demanded appraisal pursuant to the insurance policy because PURE would not pay the damages he alleged he sustained as a result of the hurricane. The plaintiff further asserted that PURE had waived its right to name an appraiser, and thus, the plaintiff was entitled under the appraisal provisions of the insurance policy to have an umpire appointed to determine the amount of damages to which plaintiff was entitled.   The policy provided if the insured and insurer failed to agree on the amount of the loss, either may:

> Demand an appraisal of the loss.  In this event, each party will choose a competent impartial appraiser with no financial interest in the outcome of the decision within twenty (20) days after receiving a written request from the other.  The two appraisers will choose an umpire.  If they cannot agree upon an umpire within fifteen (15) days, you or we may request that the choice be made by a judge of a court of record in the state where the residence premises is located.  The appraisers will separately set the amount of the loss.  If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of the loss.  If they fail to agree, they will submit their differences to the umpire.  A decision agreed to by any two will set the amount of the loss.  A decision agreed to by the appraisers is not binding.

The plaintiff included numerous documents with his motion, including a portion of the homeowners policy that provided that PURE would "pay the reconstruction cost for your dwelling, even if this amount is greater than the coverage limit shown for that location on your declaration."  The plaintiff also affixed an email thread between himself and PURE's adjuster concerning his request to invoke the appraisal provision.  The email string reveals that the plaintiff made his request on December 14, 2022.  The adjuster responded that she would review the policy and advise the plaintiff of PURE's response to the request for an

2

appraisal.  On January 3, 2023, PURE issued a letter advising the plaintiff that appraisal was premature as it had requested an opportunity to re-inspect the residence and that the request had not been honored.

The plaintiff responded to PURE's email on January 19, 2023, stating that although the house had been sold, the new owner would allow an inspection.  The plaintiff stated that PURE's inspector should have known the fall of the chimney would likely cause interior damage to the chimney.

On April 12, 2023, PURE sent correspondence to the plaintiff detailing the initial investigation of the claim revealed $49,709.86 in estimated damages as a result of Hurricane Ida. PURE indicated after application of the deductible, PURE issued payment in the amount of $8,229.86 to the relator.  PURE noted the plaintiff sold the home on April 29, 2022.  Five months later, PURE received an estimate totaling $330,674.58.  PURE indicated the new estimate prompted a request to re-inspect the property.  PURE averred the re-inspection resulted in a finding that Hurricane Ida's winds did not cause racking.  PURE noted the new owner performed extensive renovations to the interior of the building.  As a result of the renovations, PURE determined it lacked the ability to inspect the alleged damage. PURE concluded no further amounts were owed to the plaintiff under the policy and declined to participate in appraisal.

The plaintiff responded to PURE's letter on April 13, 2023, stating that PURE's latest inspection report failed to discuss the chimney and the need for the interior of the chimney to be redone in order to safely put the chimney back into use.  The plaintiff reasserted his request for an appraisal in that correspondence.

In response to the plaintiff's motion for appointment of an appraiser, PURE argued that appraisal was not appropriate as the home had been

3

remodeled extensively by the new owner, the damage could not be inspected, and any damage to the chimney below the roof line would not be covered by the policy. In the alternative, PURE asserted that it had not waived the right to participate in appraisal. In support, PURE attached the initial inspection report dated November 24, 2021, in which the inspector indicated the plaintiff reported a shifted foundation pier on the north side of the residence. The inspector concluded that the shifted foundation pier was a result of long-term settlement of the piers and not a result of Hurricane Ida. The inspector noted the cracked pier was near the chimney.

PURE also included a letter to the plaintiff, dated January 14, 2022, in which PURE denied a portion of the alleged Hurricane Ida damages. PURE noted it found the cause of foundation damage to be the result of long-term settlement of the foundation and noted such damage is excluded under the policy. PURE affixed a supplemental report from its inspector dated April 5, 2023, in which the inspector concluded there was no evidence Hurricane Ida's winds caused the damage to the house for which the plaintiff sought reimbursement.

After a hearing on July 11, 2024, the trial court rendered a written judgment on July 29, 2024, denying in part and granting in part, the plaintiff's Motion to Appoint an Umpire. The trial court denied the plaintiff's request for appointment of an umpire and ordered PURE to appoint its appraiser in fifteen days. The trial court further ordered that in the event the appraisers could not agree on an umpire, then either party could file a motion and the trial court would appoint an umpire.

The plaintiff filed a notice of intent to seek supervisory review on July 24, 2024, and the trial court set a return date of August 29, 2024. The

4

plaintiff filed his application for supervisory writs with this Court on August 7, 2024. PURE filed an opposition to the writ application on August 14, 2024.

## STANDARD OF REVIEW

An insurance policy is a contract between the parties. *Lirette v. Adams*, 2023-0377, 2023-0382, 2023-0528, p.12 (La. App. 4 Cir. 7/10/24), __ So.3d __, __, 2024 WL 3355087 *5. "The interpretation of the language of a contract is a question of law subject to the *de novo* standard of review on appeal." *1955 Nola Holdings, L.L.C., v. Windy Hill Pictures L.L.C.*, 2023-0050, p.12 (La. App. 4 Cir. 10/2/23), 376 So.3d 200, 209.

## DISCUSSION

The plaintiff argues that the trial court erred when it failed to grant his request to appoint an umpire pursuant to the appraisal provision in the homeowners' insurance policy issued to him by PURE. The appraisal provision provides:

> **Demand** an appraisal of the loss. In this event, **each party will choose** a competent impartial appraiser with no financial interest in the outcome of the decision within twenty (20) days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within fifteen (15) days, you or we may request that the choice be made by a judge of a court of record in the state where the residence premises is located. The appraisers will separately set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of the loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of the loss. A decision agreed to by the appraisers is not binding. (emphasis added).

The insurance policy between the plaintiff and PURE constitutes a contract between them, which is interpreted according to contract law.

5

Because PURE wrote the policy, any ambiguity is to be interpreted against it. The provision provides upon receipt of a written request by one party, each party "**will choose** a competent impartial appraiser with no financial interest in the outcome of the decision within twenty (20) days after receiving a written request from the other." The plaintiff made written demand under the appraisal provision on December 14, 2022 and April 13, 2023. On both occasions, PURE declined to participate in the appraisal process. It is clear from the language of the provision, that once the plaintiff made his written request, PURE did not have the option to decline to participate. It was required, under the provision it wrote, to choose an appraiser within twenty days after receiving a written request from the plaintiff.

Plaintiff argues that PURE's failure to comply with the provision's requirements resulted in PURE's waiver of its right to appoint an appraiser. In support of his argument that PURE waived its right to appoint an appraiser, the plaintiff relies upon the Supreme Court's decision in *Steptore v. Masco Const. Co., Inc.*, 93-2064 (La. 8/18/94), 643 So.2d 1213. Therein, the Supreme Court discussed the concept of waiver and noted:

> [w]aiver is generally understood to be the intentional relinquishment of a known right, power, or privilege. *Tate v. Charles Aguillard Ins. & Real Estate, Inc.*, 508 So.2d 1371 (La. 1987); *Ledoux v. Old Republic Life Ins. Co.*, 233 So.2d 731 (La. App. 3d Cir.), *cert denied* 256 La. 372, 236 So.2d 501 (1970); *Peavey Co. v. M/V ANPA*, 971 F.2d 1168 (5th Cir.1992); Comment, *Waiver and Estoppel in Louisiana Insurance Law*, 22 La.L.Rev. 202 (1961); 16B Appleman, Insurance Law and Practice, § 9081 (1981); Couch on Insurance 2d, § 35:249 (Rev. ed. 1985). Waiver occurs when there is an existing right, a knowledge of its existence and an actual intention to relinquish it or conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished. *Tate, supra*; *Peavey, supra*; *Ledoux, supra*; 16B Appleman, supra, § 9085. A waiver may

6

> apply to any provision of an insurance contract, even though this may have the effect of bringing within coverage risks originally excluded or not covered. *Tate, supra*.

*Steptore*, 93-2064, p.4, 643 So.2d at 1216.

In *Steptore*, the plaintiff filed suit against the defendant and the defendant's insurer. *Id.*, p.2, 643 So.2d at 1214-1215. The insurer retained the same firm to represent both itself and the defendant. Approximately six months later, the insurer denied coverage by claiming the defendant breached a provision in the policy. *Id.*, p.2, 643 So.2d at 1215. The defendant filed a third-party demand against the insurer. The Supreme Court determined the insurer waived its coverage defense. *Id.*, p.4, 643 So.2d at 1215-1216. The Supreme Court indicated, "when an insurer, with knowledge of facts indicating noncoverage under the insurance policy, assumes or continues the insured's defense without obtaining a nonwaiver agreement to reserve its coverage defense, the insurer waives such policy defense. "*Id.*, p.5, 643 So.2d at 1216 (*citing Peavey Co. v. M/V ANPA*, 971 F.2d 1168 (5th Cir. 1992)).

In response, PURE argued that appraisal was not appropriate under the circumstances. It also contended that its actions did not constitute waiver of the appraisal provision. PURE notes that the plaintiff sold the house and five months after the sale, the plaintiff provided PURE with a new estimate of damages. PURE stated that it initially determined appraisal was premature, as it required a re-inspection before determining it failed to agree on the amount of the loss. PURE argued that foundation settlement more likely caused any internal damage to the chimney and would not be covered by the policy. PURE averred that there was no knowing and voluntary relinquishment of the right to participate in the appraisal process.

7

However, PURE subsequently provided the plaintiff with a supplemental report from its inspector dated April 5, 2023, in which the inspector concluded there was no evidence Hurricane Ida's winds caused the damage to the house for which the plaintiff sought reimbursement. On April 12, 2023, PURE sent correspondence to the plaintiff detailing the initial investigation of the claim revealed $49,709.86 in estimated damages as a result of Hurricane Ida. PURE indicated after application of the deductible, PURE issued payment in the amount of $8,229.86 to the relator. PURE acknowledged that a re-inspection was performed after it received an estimate totaling $330,674.58, from the plaintiff. PURE averred the re-inspection resulted in a finding that Hurricane Ida's winds did not cause racking.

Waiver, as defined in *Steptore*, "occurs when there is an existing right, a knowledge of its existence and an actual intention to relinquish it or conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished." 93-2064, p. 4, 643 So.2d at 1216. In the present case, the plaintiff and PURE both had a right under the appraisal provision to appoint an appraiser within twenty days of the written request to demand the appraisal process. PURE was well aware of its right to appoint an appraiser and failed to do so, stating that it declined to participate in the appraisal process. PURE's action in declining to participate in the appraisal process indicated a waiver of its right to appoint an appraiser. Once the plaintiff sent a written request for appraisal, PURE had the obligation to appoint an appraiser. The appraisal provision did not give PURE the option to decline to participate on the basis that appraisal was premature. PURE's failure to appoint an appraiser constitutes a waiver of its rights under the appraisal provision.

However, the remedy sought by the plaintiff, i.e. the appointment of an umpire by the trial court, is inconsistent with the language of the appraisal provision. The provision provides for a court to appoint an umpire when the two appraisers cannot agree upon an umpire. In this case, only one appraiser has been appointed. The plaintiff seeks to have the trial court appoint an umpire because the appraisal provision states that if the appraisers fail to agree on the amount of the loss, the amount of the loss will be submitted to the umpire. "A decision agreed to by any two will set the amount of the loss."

It appears that the trial court was trying to fashion an appropriate remedy given the language of the appraisal provision and the issue of waiver by PURE. Although PURE waived its right under the appraisal provision, the trial court erroneously reinstated the right to appoint an appraiser so that the other requirements of the provision could proceed.

Notably, the appraisal provision provides that a decision agreed to by the appraisers (or one appraiser and umpire) will set the amount of the loss. However, a decision agreed to by the appraisers is not binding on the parties. The filing of the present lawsuit by the plaintiff/homeowner against his insurer, PURE, for reimbursement of damages allegedly sustained as a result of Hurricane Ida, acknowledges a disagreement concerning the coverage for and amount of damages. The request for an umpire at this stage in the ligation is beyond the scope of the appraisal provision.

Accordingly, the plaintiff's writ application is granted. The trial court's judgment is vacated.

**WRIT GRANTED**
**JUDGMENT VACATED**

9