**In the Matter of CUDD PRESSURE CONTROL, INC. as Owner of and/or Operator of M/V HOUMAS for Exoneration from or Limitation of Liability.**

No. CIV. A. 98–585.

United States District Court, E.D. Louisiana.

April 7, 2000.

15. Rec. Doc. Nos. 25, 27.

John C. Enochs, Degan, Blanchard & Nash, New Orleans, LA, Michael H. Bagot, Jr., thomas Arnoult Rayer, Jr., Wag-ner & Bagot, New Orleans, LA, for Cudd Pressure Control, Inc.

Gerard T. Gelpi, Norman Charles Sullivan, Jr., G. Beauregard Gelpi, Gelpi, Sullivan, Carroll & Gibbens, New Orleans, LA, Winston Edward Rice, Rice Fowler Kingsmill, Vance, Flint & Rodriguez, New Orleans, LA, for Cigna Ins. Co.

Michael Eugene Shelton, Joe K. Mitchell, Law Offices of Michael E. Shelton, Houston, TX, Kaye Johnson Persons, Law Offices of William L. Denton, for Nora Baurucano Diaz De Urribarriand, Angel Emiro Cesmuna, Abbiegail Thibodeaux Fortner, Angel Emiro Bermudez Carmona, Miriam Yolimar Tesorero De Frontado and Kay Fortner Daneault.

Patrick J. McShane, Frederick T. Greschner, Jr., Robin C. Minturn, Frilot, Partridge, Kohnke & Clements, LC, New Orleans, LA, for Lexington Ins. Co.

Ashton Robert O'Dwyer, Jr., Lemle & Kelleher, LLP, New Orleans, LA, for Redland Ins. Co.

William F. Grace, Jr., Earl F. Sundmaker, III, Chaffe, McCall, Phillips, Toler & Sarpy, LLP, New Orleans, LA, for Marsh & McLennan Companies and Marsh Inc.

### MEMORANDUM OPINION

BARBIER, District Judge.

Subsequent to the compromise of the personal injury claims in this limitation action, the parties agreed to, and the Court approved submission of, the trial on the issue of coverage under CIGNA's policy number PFF 050086 on briefs. After the parties submitted initial trial memoranda, the Court granted the parties' request for oral argument on the issues raised therein. The Court subsequently reviewed supplemental memoranda and exhibits, and oral argument was held on April 5, 2000. Now, having considered the record, the applicable law, and the memoranda and argument of the parties, the Court is ready to rule.

## BACKGROUND

This case arises out of the capsizing and sinking of the M/V HOUMAS, a jackup vessel owned by petitioner Cudd Pressure Control, Inc. ("Cudd"), on January 31, 1998 in Lake Maracaibo, Venezuela. As a result of the casualty, the vessel's captain, William Fortner, and two snubbing supervisor trainees, Adalberto Diaz and Wilmer Frontado, died, and a motorman, Angel Bermudez, sustained personal injuries. Following the sinking of its vessel, Cudd filed a petition for limitation from liability, and claims were filed in the limitation proceeding by the widows of Fortner, Diaz and Frontado, as well as by Bermudez. The personal injury claims were eventually settled, but an issue remains as to whether the claims of the Venezuelan snubbing supervisor trainees, Diaz and Frontado, are covered by the Employer's Responsibility policy placed by Cudd's broker, Sedgwick James (succeeded by Marsh & McLennan) and written by CIGNA.

## I. THE COVERAGE QUESTION

The parties agree that the only possible basis for denial of coverage under the policy is exclusionary language which provides that coverage is excluded for:

> 7. Bodily injury sustained by any:
>
>  (a) master or crewmember of any vessel or the flying crew of any aircraft;
>
>  (b) "employee" in the course of any employment subject to United States government workers' compensation laws, including Jones Act, Longshoreman & Harbor Workers' Compensation Act, Defense Base Act or War Hazards Compensation Act or any amendment or replacement of those acts.[1]

Arguing that Frontado and Diaz were crewmembers of the M/V HOUMAS, CIGNA maintains that the exclusion applies to their claims and justifies its denial of coverage. Cudd has made the following arguments that the exclusion does not apply: (1) "crewmembers" is an ambiguous term as used in the policy and as such, its meaning should be construed against CIGNA, the drafter, in favor of coverage; (2) by any reasonable court-supplied definition of the term, Frontado and Diaz are not crewmembers; and (3) CIGNA is estopped from denying coverage because it waived the "crewmembers" defense by its previous actions with respect to the claims. For the reasons that follow, the Court finds that CIGNA is liable to Cudd for coverage under the policy.

## DISCUSSION

■ As a threshold matter, the Court finds that Louisiana law applies to this dispute. In its trial memorandum, CIGNA raised for the first time an argument that Georgia law should apply,[2] arguing that the policy was negotiated by CIGNA representatives in Delaware with Sedgwick James representatives in Atlanta, Georgia, and delivered to Sedgwick James in Atlanta, and that Georgia has a greater interest in resolution of the issues raised in this suit, because "Cudd merely had an office here [in Louisiana]."[3]

Subsequently, Cudd filed the affidavit of Gary Zeringue, Director of Risk Management for RPC, Inc. (parent of Cudd), which stated, *inter alia*, that Cudd's managerial office is located in Houma, Louisiana; that the accounting, payroll and management departments of Cudd are located in Houma, Louisiana; that Cudd maintains its general ledger in Houma, Louisiana; that Cudd's marine operations division, including the Venezuelan operation, is located in Belle Chasse, Louisiana; and that as director of Risk Management, he obtained insurance coverage for RPC/Cudd, and all discussions and negotiations on behalf of Cudd regarding the CIGNA coverage

---

1. Employers Responsibility Policy, Cudd Exh. 1.

2. CIGNA memo, 24 *et seq.*

3. *Id.* at 28.

came from him out of Cudd's Houma office, and the policy was delivered to him at the Houma office.[4]

■ "Although a federal court customarily applies the choice of law rules of the forum in which it is located, the court in maritime cases must apply federal maritime choice of law rules." *Albany Ins. Co. v. Anh Thi Kieu*, 927 F.2d 882, 890 (5th Cir.), *cert. denied*, 502 U.S. 901, 112 S.Ct. 279, 116 L.Ed.2d 230 (1991) (citations omitted). Resolving seeming inconsistencies in prior Fifth Circuit precedent, the Court in *Anh Thi Kieu* held that courts should look to the state(s) where a policy was formed, issued, and delivered to determine which states were "eligible" to have their law applied (a first layer "contacts" test), and then choose from among those the one with the greatest interest in resolution of the issues presented as the state whose law should be applied (a second layer "interest" test). 927 F.2d at 891.

Applying this analysis, it appears that Louisiana, Georgia, and possibly Delaware satisfy the "contacts" test; but of these three, Louisiana has the greatest interest in the dispute, based upon the Zeringue affidavit.[5] Accordingly, the Court finds that Louisiana insurance law applies to this dispute.

## A. CIGNA Has Waived its Affirmative Defense Based Upon the "Crewmembers" Exclusion.

Relying on *Steptore v. Masco Construction Co., Inc.*, 643 So.2d 1213 (La.1994), Cudd argues that CIGNA is estopped from raising the "crewmembers" exclusion as a

4. Rec. Doc. 265.

5. CIGNA has not introduced any evidence to rebut Zeringue's affidavit.

6. See Finizio depo., 135.

7. Cudd Exh. 16.

8. Cudd Exh. 17.

9. Cudd Exh. 19.

10. Cudd Exh. 22.

defense because CIGNA did not timely attempt to reserve its rights under the policy, but rather originally informed Cudd that it would cover the claims of Frontado and Diaz and that another underwriter would cover the claims of Fortner.[6]

After the M/V HOUMAS capsized on January 31, 1998, CIGNA began settlement negotiations with representatives of Frontado and Diaz. In a March 19, 1998 letter, Karen Finizio, CIGNA's Senior Claims Service Representative, advised the Venezuelan attorney hired by CIGNA that CIGNA was covering the claims of the passengers who were not crew members and that Finizio wanted to be involved in the negotiations.[7] Knowing that it had a basis to deny coverage for crewmembers, CIGNA continued to attempt settlement on its and Cudd's behalf and extended authority to the Venezuelan attorney to compromise the matter.[8] On April 20, 1998, CIGNA was advised that Frontado's representatives rejected the offer, and for the first time, CIGNA attempted to reserve its rights on May 7, 1998.[9] On July 30, 1998, CIGNA issued a denial of coverage.[10] Cudd contends that CIGNA's agreement to provide coverage, subsequent retaining of counsel (the same Venezuelan counsel which represented Cudd), the extension of authority to counsel to settle the claims, and the prejudice suffered by Cudd when CIGNA failed to do so,[11] effectively waived CIGNA's coverage defense and prohibits CIGNA from denying coverage.

In contrast, CIGNA argues that it should not now be estopped from raising

11. Cudd maintains that because CIGNA initially undertook to settle the claims, but later would not increase its settlement offer to an amount acceptable to the claimants but less than awards in similar cases brought in the United States, the claimants filed suit in the United States leaving Cudd with a much higher exposure for the accident. CIGNA's Senior Claims Service Representative essentially conceded this point. Finizio depo., 137.

the "crewmembers" exclusion because its initial acts of attempting to settle the claims did not result in a knowing waiver, since its actions were based on erroneous information provided by Cudd and Continental Underwriters, Ltd. (which represented Cudd's P & I carrier, Redlands). CIGNA argues that it was informed by Cudd and Continental that these men were "mere passengers" and not members of the crew of the M/V HOUMAS, and thus it was not alerted to the possible applicability of the "crewmembers" exception.

In addition, CIGNA argues its actions do not amount to a waiver of defenses under La. R.S. 22:651 which states:

None of the following acts by or on behalf of an insurer shall be deemed to constitute a waiver of any provision of a policy or of a defense of the insurer thereunder:

(3) Investigating any loss or claim under any policy or engaging in negotiations looking toward a possible settlement of any such loss or claim.

CIGNA points to the application of this statute in *Insurance Co. of North America v. Board of Com'rs of Port of New Orleans,* 733 F.2d 1161 (1999), in which the Fifth Circuit held that the insurer, whose investigatory conduct was based upon incorrect information, was not estopped from raising its coverage defense when it did so as soon as it discovered the true facts.

CIGNA also argues that Cudd's reliance on *Steptore* is misplaced because *Steptore* is distinguishable from this case on two points: (1) in *Steptore,* the insurer was given information on the day of the accident that raised a coverage defense; and (2) the rationale regarding conflict of interests (created when the same attorney represents both the insured and the insurer, after it's clear their interests are not aligned), present in *Steptore,* is absent here.

Justice Dennis set forth the Louisiana law of waiver as it applies to insurance defenses in *Steptore v. Masco Const. Co., Inc.,* 643 So.2d 1213, 1216 (La.1994):

Waiver is generally understood to be the intentional relinquishment of a known right, power, or privilege. Waiver occurs when there is an existing right, a knowledge of its existence and an actual intention to relinquish it or conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished. A waiver may apply to any provision of an insurance contract, even though this may have the effect of bringing within coverage risks originally excluded or not covered.

It is well established that an insurer is charged with knowledge of the contents of its own policy. In addition, notice of facts which would cause a reasonable person to inquire further imposes a duty of investigation upon the insurer, and failure to investigate constitutes a waiver of all powers or privileges which a reasonable search would have uncovered.

Waiver principles are applied stringently to uphold the prohibition against conflicts of interest between the insurer and the insured which could potentially affect legal representation in order to reinforce the role of the lawyer as the loyal advocate of the client's interest. Accordingly, when an insurer, with knowledge of facts indicating noncoverage under the insurance policy, assumes or continues the insured's defense without obtaining a nonwaiver agreement to reserve its coverage defense, the insurer waives such policy defense.

*Steptore,* 643 So.2d at 1216–17 (citations omitted).

▬ Accepting the framework that a waiver occurs when there is an existing right, a knowledge of its existence, and an actual intention to relinquish it or conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished, the documentary evidence and deposition testimo-

ny in this case preponderates toward a finding that a waiver occurred.

On February 2, 1998 (two days after the accident) Karin Finizio, CIGNA's Senior Claims Service Representative, received the ACORD/Notice of Claim, which contains the following "description of occurrence": "Vessel HOUMAS turned over killing the U.S. Captain and **two Venezuelan crew.**"[12] The Claims Register Notice, also received on February 3, 1998, reflects that the "Insured's ship overturned killing several crew."[13] These documents, received by CIGNA two days after the occurrence, should have put CIGNA on notice of the possible applicability of the crewmember exclusion.

Notwithstanding the plain language on these documents, CIGNA maintains that in a subsequent telephone conversation with Gary Zeringue (Cudd's Risk Manager), Karen Finizio was misinformed that Frontado and Diaz were not employees, and were passengers on the M/V HOUMAS, and relying on this misinformation, initially assumed liability for the claims.[14] However, in her deposition, Finizio admitted that she could not be sure if her notation indicating that Frontado and Diaz were passengers was added because she was told that or because she assumed so based on her understanding of the facts.[15] She also admitted that no one at Cudd told her the Venezuelan decedents were mere passengers.[16] At any rate, even if CIGNA had information that might have suggested the claimants were mere passengers, the other representations (i.e., use of the term crew in the ACORD in the same sentence as "vessel" and "captain") at least should have put CIGNA on notice of the possibility of the applicability of the "crewmem-

bers" exclusion, and triggered a duty to investigate further.

If the foregoing facts were not enough to charge CIGNA with constructive knowledge of facts that could trigger the exclusion, Finizio testified that as of February 25, 1998—after she had seen the ACORD and the claims register with their references to "crew"—she had considered and ruled out applicability of the crewmember exclusion.[17] Under these circumstances, CIGNA's argument that it initially assumed coverage based on misinformation provided by Cudd and other sources is unavailing.

As for CIGNA's argument that the instant case is distinguishable from *Steptore* because in *Steptore*, the insurer was made aware of facts which put it on notice of the applicability of the exclusion within a day of the incident, the Court finds the distinction drawn by CIGNA meaningless since in this case, CIGNA received the ACORD and claims register containing the crew language within two days of the accident. The fact that CIGNA received facts which should have put it on notice of the applicability of an exclusion 24 hours later than occurred in *Steptore* simply does not suggest that the rule of *Steptore* is inapplicable here.

With respect to the second distinction drawn by CIGNA between this case and *Steptore*—CIGNA's argument that the conflict of interest concerns present in *Steptore* are lacking here—the Court is similarly unpersuaded. In concluding that a waiver had occurred, the *Steptore* court found that the insurer "assumed the defense without reserving its rights or otherwise protecting its interests and continued

---

**12.** CIGNA Exh. 8, Cudd Exh. 11 (emphasis added).

**13.** Cudd Exh. 13.

**14.** Cudd Exh. 12. In fact, CIGNA was able to defeat Cudd's prior motion for summary judgment on the strength of this argument.

**15.** Finizio depo., 40–41.

**16.** *Id.* at 130. In fact, both CIGNA representatives who CIGNA previously argued were misled, subsequently testified that they were not. Finizio depo., 99, 107–08, 117–19; Jenoff depo., 83–84.

**17.** Finizio depo., 91.

to represent the insured when its own interests were adverse to the insured." 643 So.2d at 1217. While CIGNA acknowledges that the Venezuelan attorney Jose Felix Diaz Bermudez ("Diaz") was acting for Cudd as well as the P & I insurer and CIGNA, CIGNA argues that as far as CIGNA was concerned, he acted only as a claims adjuster. This contention is belied by the record, which contains Diaz' April 20, 1998 opinion letter to Ms. Finizio,[18] containing legal advice, as well as the testimony of Ms. Finizio that she expected that her communications with Diaz would be protected by the attorney-client privilege.[19]

There is one more critical fact which puts the "nail in the coffin" of CIGNA's denial of waiver argument. When CIGNA finally did issue its reservation of rights on May 7, 1998, it did so **not because new information had come to light, but because a new claims representative, Orendain Ocampo, took over the file.** Ms. Ocampo apparently had no information but Ms. Finizio's file, and after reviewing it, issued a memorandum recommending that the exclusion be explored.[20] This fact alone demonstrates that CIGNA had all the facts necessary to reserve its rights (arguably since two days after the accident, when it received the ACORD referring to crewmembers) and simply failed to do so.

Given all the facts and surrounding circumstances, specifically, that CIGNA is charged with knowledge of its policy, that its first notice of the accident described the decedents as crewmembers (which at the very least should have alerted CIGNA to the issue of the exclusion), that Ms. Finizio considered but rejected the applicability of the "crewmembers" exclusion, that Ms. Ocampo concluded its applicability with no new information; that CIGNA relied on Cudd's Venezuelan attorney to

initiate settlement discussions; and that Cudd was ultimately prejudiced because CIGNA failed to raise its settlement offer resulting in the filing of personal injury suits in the United States, it is more than reasonable to conclude that CIGNA waived the "crewmembers" exclusion defense, and is therefore liable for the Frontado and Diaz claims.

### B. *The Term "Crewmembers" as Used in the Policy is Ambiguous.*

Alternatively, even if the Court were to find that CIGNA had not waived its coverage defense based on the "crewmembers" exclusion by failing to timely raise it, the Court finds that under applicable law and the factual circumstances present in this case, the term as used in the CIGNA policy is ambiguous. Moreover, if the ambiguity alone does not mandate that the Court construe the term in favor of coverage, the evidence of the intent of the parties preponderates in favor of a finding that the claims of these parties should be covered.

It is Cudd's position that the term "crewmembers," which is not defined in the policy, is ambiguous on its face, and as such, it should be construed against the drafter, CIGNA. In support of this argument, Cudd cites to the deposition testimony of Patricia Thompson, CIGNA's International Underwriter, in which she acknowledged that the term as used in the policy is ambiguous.[21]

In response, CIGNA argues that "crewmember" is not ambiguous, because the Fifth Circuit has ruled that the Jones Act definition of "crew member" should be supplied when the term is used in policy language like that at issue here, citing *Williams v. Fab–Con, Inc.*, 990 F.2d 228, 230–31 (5th Cir.1993).

In its Minute Entry of July 22, 1999 granting summary judgment in favor of

---

18. Cudd Exh. 18.

19. Finizio depo., 88–90.

20. CIGNA Exh. 31.

21. Thompson depo., 85.

Cudd and against Lexington on another policy, the Court set forth the relevant law on interpretation of insurance contracts:

Under Louisiana law, insurance policies are treated as contracts and construed by using the general rules of interpretation of contracts as set forth in the Civil Code. *Reynolds v. Select Properties, Ltd.*, 634 So.2d 1180 (La.1994). Under these general rules of interpretation, the Court is to determine the parties' common intent as reflected by the words of the contract. *Id.;* La.C.C. art. 2045. Such intent is to be determined in accordance with the general, ordinary meaning of the language used in the policy, unless the language used has acquired a technical meaning. *Reynolds,* 634 So.2d at 1183; La.C.C. art.2047. "When the words of a contact are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La.C.C. art.2046. An insurance contract is to be construed as a whole, and one portion thereof should not be construed separately at the expense of disregarding another. La.C.C. art.2050; *Pareti v. Sentry Indem. Co.*, 536 So.2d 417 (La. 1988).

Any ambiguity that persists after applying the usual rules of construction must be resolved in favor of the insured. *Reynolds,* 634 So.2d at 1183; *Pareti* 536 So.2d at 420. Under this rule of strict construction, "[e]quivocal provisions seeking to narrow the insurer's obligation are strictly construed against the insurer, since these are prepared by the insurer and the insured had no voice in the preparation." *Garcia v. St. Bernard Parish School Board,* 576 So.2d 975, 976 (La.1991); see also La.C.C. art 2056 ("[i]n case of doubt that cannot be otherwise resolved, a provision in a contract

must be interpreted against the party who furnished its text.")

1999 WL 540891 (E.D.La., July 23, 1999).

■ In the instant case, the term "crewmembers" can almost be considered ambiguous by definition, since it is susceptible to more than one interpretation and is not defined in the policy. These facts, together with Patty Thompson's admission in her deposition that she (CIGNA's International Underwriter) considered it ambiguous, justify a finding that the term is ambiguous and as such must be interpreted by the Court with doubt resolved against the drafter.[22]

"The judicial responsibility in interpreting insurance contracts is to determine the parties' common intent." *Ducote v. Koch Pipeline,* 730 So.2d 432, 435 (La.1999). In this case, the evidence preponderates toward a finding that the parties intended that the snubbing employees would be covered under CIGNA's Employer's Responsibility Insurance Policy.

The record reveals that in the negotiations leading up to the issuance of the policy, the distinctions made between classes of employees were based on nationality (i.e., Venezuelan or American), *not* on whether they were crewmembers or not. This distinction is borne out by the testimony of Debbie Hines–Brown of Sedgwick James who testified that in placing the policy, she informed Patricia Thompson (International Underwriter for CIGNA) that she needed coverage for two groups of employees, Americans and Venezuelans, and that while the Americans would be covered under the P & I policy, she needed "difference in condition" coverage for the Venezuelans to fill any gaps in the local cover. The intention was that all Venezuelan nationals would be covered under the Employers Responsibility policy

---

**22.** For reasons covered by counsel for Lexington in its trial memoranda and oral argument, the Court finds that *Williams v. Fab–Con* is distinguishable from the case at bar, and thus does not require the Court to supply the crewmember definition adopted in that case. Nev-

ertheless, as more fully discussed *infra,* even if the Court were to adopt the definition of *Williams v. Fab–Con,* it would not change the result that the Court finds coverage for the Frontado and Diaz claims under the CIGNA policy.

regardless of whether they were crewmembers or not.[23] Additionally, Ms. Thompson admitted that she knew that the snubbing crew was not considered by CIGNA to be covered under the P & I policy.[24]

The intention to structure the insurance coverages this way is borne out by what actually occurred. Sedgwick went out and purchased a P & I policy from Redlands to cover the navigational crew (consisting of captain, cook, galleyhand, and deck-hand);[25] all others were covered by the Seguros Caracas "local cover." The CIGNA Employers' Responsibility policy was purchased as contingent coverage over and above the local cover. This fact is evidenced by the "Luque Memo" which shows all Venezuelan snubbing hands, including Frontado, as being covered by the local policy. The Confirmation of Binding sent from Ms. Thompson (of CIGNA) to Ms. Hines–Brown (at Sedgwick) indicates that CIGNA was to provide Employers Responsibility coverage for "locals."[26] Additionally, the Large Loss Report, completed by Ms. Thompson for CIGNA, reflects that on June 12, 1998, over a month after CIGNA issued its reservation of rights letter, Thompson responded to the question "Was this the type of loss anticipated when the account was written?" with "Yes."[27]

One final piece of evidence the Court points to in support of the conclusion that the CIGNA policy was intended to cover all the Venezuelan nationals is that fact that the policy premium was calculated based on the salaries of the total number of Venezuelan employees, including the snubbing employees, regardless of status as crewmembers or non-crewmembers.[28] To find that the parties did not intend the Venezuelans to be covered under the policy would require the absurd conclusion

that although CIGNA charged and Cudd paid a premium for their coverage, they did not intend for Frontado and Diaz to be covered. Therefore, the Court finds that applying Louisiana law on the interpretation of insurance contracts, which requires it to determine the intent of the parties resolving close questions in favor of the insured, coverage exists for the claims of Frontado and Diaz.

## C. CIGNA Has Not Met Its Burden of Demonstrating that Frontado and Diaz are Jones Act Seamen.

■ Even if the Court were to apply the rule of Williams v. Fab–Con, and find the term "crewmembers" as used in the policy should be defined with reference to the Jones Act cases addressing seaman status, CIGNA, as insurer, bears the burden of proving the applicability of its exclusion, and it has failed to prove that Frontado and Diaz met the requirements for seaman status.

In addition to arguing that the Court's prior ruling that Frontado and Diaz are not covered by the Jones Act requires a finding that they are not crewmembers under the cases addressing Jones Act seaman status, Cudd emphasizes the limited amount of time that the Venezuelan snubbing crew spent aboard the vessel, and argues that Frontado and Diaz did not work the minimum 30% of their time on board a vessel to be considered seamen.[29]

CIGNA argues that the Court's prior ruling does not preclude a finding that the Venezuelan claimant's are "crewmembers," because that ruling did not determine whether the claimants were crewmembers of the M/V HOUMAS, but focused on whether the claimants were precluded

---

23. Hines–Brown depo., 18–24.

24. Thompson depo., 80.

25. Coombs depo., 34; Zeringue depo., 20.

26. Marsh Exh. K.

27. Marsh Exh. L.

28. Thompson depo., 56–7.

29. See Chandris, Inc. v. Latsis, 515 U.S. 347, 115 S.Ct. 2172, 2191, 132 L.Ed.2d 314 (1995) and Barrett v. Chevron, 781 F.2d 1067, 1076 (5th Cir.1986).

from recovery under the Jones Act because they were not citizens of the United States, they were in the employ of an enterprise engaged in the exploration of minerals in foreign territorial waters, and whether Venezuelan law provided them a remedy. Instead, citing *McDermott Intern., Inc. v. Wilander,* 498 U.S. 337, 111 S.Ct. 807, 817, 112 L.Ed.2d 866 (1991), and its progeny, CIGNA stresses that seaman status requires that one contribute to the mission of the vessel, and that one need not aid in navigation to do so. With respect to the requirement for a substantial connection to a vessel or fleet, CIGNA argues that since Cudd has only alleged that the claimants spent a majority of their time on platforms (rather than the vessel), conceivably, they could have spent up to 49% of their time on the vessel, thus meeting the "substantial connection to a vessel" requirement. Further, CIGNA argues that the documents produced to them (mostly in the form of work tickets, which indicate that in 1997 and 1998, Frontado and Diaz spent far less than 30% of their time aboard vessels) are incomplete and do not provide enough information to determine the exact amount of work done on the vessel by the claimants.

While the Court agrees that its prior ruling does not preclude a finding of seaman or crewmember status for the claimants, it appears that CIGNA has failed to meet its burden of proof on this point. CIGNA's theory that Frontado and Diaz could have spent 49% of their time on the vessel is purely speculative, and falls far short of demonstrating that the claimants were in fact seamen under the Jones Act, and as insurer, CIGNA bears the burden of proof on the applicability of the exclusion. Accordingly, while the Court finds that Cudd may well have fallen short of proving that Frontado and Diaz were not seamen, neither has CIGNA proven that

they were, which it must do to avoid coverage.

## II. THE SEGUROS CARACAS POLICY

■ In its recently filed pleadings, CIGNA has argued that if coverage is owed to Cudd under the Employers Responsibility policy, it should be offset by the value of the coverage provided by the underlying Seguros Caracas policy, upon which Cudd has apparently made no claim. However, the Court finds that this "eleventh hour" argument comes too late. CIGNA did not raise this defense in its Answer, its Opposition to Cudd's Motion for Summary Judgment, or even in the final Pre-Trial Order. Under the case law interpreting Federal Rule 8(c), failure to plead an affirmative defense results in a waiver of the defense. See generally, 5 *Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure,* § 1278.[30] While it is also true that "if a party that asserts an affirmative defense … fails to raise that defense in an operative pleading, that party does not necessarily waive the defense …. if [the defense was] raised … at a pragmatically sufficient time, and the party opposing the defense was not prejudiced in its ability to respond, a court may hold that the defense was not waived," [31] in this case, the Court finds that CIGNA did not raise the defense at a "pragmatically sufficient time." To the contrary, in the exhibits introduced to the Court in connection with this issue, the parties have not been able to conclusively identify the coverage provided by the policy or stipulate to translations of the policy (which is written in Spanish). To resolve these issues satisfactorily, it appears to the Court further testimony may well be required. Given the consent order signed by all parties on

---

**30.** See also, *U.S. v. Vahlco Corp.,* 720 F.2d 885, 890 n. 9 (5th Cir.1983); *Automated Medical Laboratories, Inc. v. Armour Pharmaceutical Co.,* 629 F.2d 1118, 1123 .(5th Cir.1980).

**31.** *United States v. Shanbaum,* 10 F.3d 305, 312 (5th Cir.1994)(internal quotations and citations omitted).

December 28, 1999[32] that the coverage issue would be submitted to the Court on briefs on February 29, 2000 and resolved by April 15, 2000, CIGNA's raising of this affirmative defense for the first time at this juncture does not come at a "pragmatically sufficient time", and the Court therefore finds that it has been waived. Accordingly, CIGNA's objections to Cudd's exhibits 35, 41, and 42 are denied as moot.

## III. CUDD'S THIRD–PARTY CLAIM AGAINST SEDGWICK

Finally, because the Court finds that coverage exists under the CIGNA policy for Frontado and Diaz, the question whether Sedgwick James negligently failed to procure insurance coverage is moot.